STATE OF CONNECTICUT *v.* VAN SNYDER
(13785)

Heiman, Schaller and Hennessy, Js.

Argued November 2, 1995—decision released March 12, 1996

*Rita M. Shair*, assistant state's attorney, with whom were *John A. Connelly*, state's attorney, *Robin Lipsky*, assistant state's attorney, and, on the brief, *David J. Sheldon*, former deputy assistant state's attorney, for the appellant (state).

*John M. Gesmonde*, for the appellee (defendant).

HEIMAN, J. The state appeals[1] from the judgments[2] rendered by the trial court, following the court's granting of the defendant's motion to dismiss the informations charging him with five counts of harassment in the second degree[3] in violation of General Statutes § 53a-183 (a) (2).[4] The trial court found that a direct communication from a defendant to a victim is required to establish a violation of § 53a-183 (a) (2), and that, in the present case, the informations failed to allege that

---

[1] The state appeals pursuant to General Statutes § 54-96, which provides: "Appeals from the rulings and decisions of the superior court, upon all questions of law arising on the trial of criminal cases, may be taken by the state, with the permission of the presiding judge, to the supreme court or to the appellate court, in the same manner and to the same effect as if made by the accused."

[2] This is a consolidated appeal.

[3] The trial court also dismissed the counts of the informations that charged the defendant with violating General Statutes § 53a-182 (a) (2), but no appeal was taken from that action.

[4] General Statutes § 53a-183 (a) provides in pertinent part: "A person is guilty of harassment in the second degree when . . . (2) with intent to harass, annoy or alarm another person, he communicates with a person by telegraph or mail, by electronically transmitting a facsimile through connection with a telephone network, or by any other form of written communication, in a manner likely to cause annoyance or alarm . . . ."

the defendant directly communicated with any of the complainants. Accordingly, the trial court dismissed the informations on the ground that they failed to charge an offense constituting harassment in the second degree. The state contends that the trial court's ruling was improper. The state asserts that in order to establish a violation of § 53a-183 (a) (2), it does not have to prove that the defendant directly communicated with the persons whom the defendant intended to harass, and that, therefore, its informations did not fail to charge an offense. We agree with the state and reverse the judgment of the trial court.

The facts essential to an understanding of our resolution of this appeal are as follows.[5] In April, 1993, Joseph Sullivan, the acting superintendent of public schools in Waterbury, and Charles Joy, the assistant superintendent for instruction, were jointly involved in the suspension of the defendant from duty for one week. The defendant was the principal of Crosby High School.

Commencing in July, 1993, Sullivan, Joy, and Foster Crawford, the assistant superintendent for special education, began receiving by mail magazine subscriptions to which they had not subscribed and packages of merchandise and services that they had not ordered. For example, Joy received dozens of video cassettes, audio discs, music cassettes, and collector plates and cards. Joy estimated that as of October, 1993, he had received over 500 pieces of mail and merchandise valued at approximately $5620.

All three of the victims had been billed for these unsolicited items and had received second and third notices from billing services. In these past due notices, the billing agencies threatened that they would take

---

[5] The operative facts set forth in this opinion come from the applications for arrest warrants that commenced the prosecution of the defendant and that formed the basis of the trial court's findings of fact and law.

aggressive collection action if the outstanding bills were not paid. The notices caused the victims to believe that such action would have an adverse effect on their credit standings.

Additionally, Sullivan, Joy and Crawford had spent a considerable amount of time making telephone calls and mailing numerous forms and letters in attempts to cancel unwanted magazine subscriptions, and to stem the tide of unordered and unwanted merchandise and services. Joy changed his telephone number in an effort to stop solicitors from calling at all hours of the day and night.

On September 8, 1993, Joy attended a meeting in the defendant's office at Crosby High School. Joy wanted to take notes at the meeting and picked up a note pad from the defendant's desk. Joy noticed that the pad had an imprint of his name and home address. On September 15, 1993, Joy again attended a meeting at Crosby High School and, while he was using the telephone in the defendant's office, he saw ten or twelve subscription forms protruding from the defendant's desk drawer.

On September 21, 1993, Joy received a telephone call from a person claiming that Joy was registered for a particular seminar. Joy asked the caller to send him the original registration card and the envelope in which it had been mailed, and the caller did so. When Joy received the registration materials, he compared the handwriting on the materials with the handwriting on certain documents that the defendant had prepared and signed. Joy concluded that the handwriting on the registration materials was very similar to that of the defendant. Joy also recognized that the postage on the registration envelope was from a postage meter at 236 Grand Street, the building where Joy's office was located.

On October 8, 1993, Joy intercepted the mail from the Crosby High School mail bag and noticed a subscription card with his name and address listed as the subscriber. Joy asked a secretary to examine the contents of the mail bag, and the secretary found six pieces of mail similar to the one that Joy had discovered.

The false subscription cards and known samples of the defendant's handwriting were submitted to the state forensic laboratory for handwriting comparison. The examiner concluded that the cards and the known samples were written by the defendant.

On October 21, 1993, pursuant to a warrant, the police searched the defendant's office at Crosby High School. The items seized included thirty-one assorted mail orders and requests for magazine subscriptions and a box containing over 510 homemade address labels. Among the addresses printed on the labels were those of Joy's residence, Sullivan's residence and Crawford's residence and office. Over 300 of the labels contained the residential address of Guy DiBiasio, a former superintendent of public schools in Waterbury. The police also found three order forms containing the Waterbury address of Robert Rousseau, Karen Rousseau and James Wigglesworth.

During the search, the defendant told the police that he had been subjected to harassment by the school officials who had suspended him, and, that for this reason, he was ordering subscriptions to be sent to the officials. The defendant also stated that he was having problems with a student, and that he had a confrontation with the student's father. Because the defendant was upset with this student and his father, he began ordering magazine subscriptions to be sent to the student's home.

Approximately one month after the search of the defendant's office, Robert Rousseau and Karen Rous-

seau reported to the police that they had been involved in a verbal confrontation with the defendant and that, thereafter, they had begun to receive numerous items of unsolicited mail. Karen Rousseau stated that the argument with the defendant pertained to Wigglesworth, her son. According to Karen Rousseau, one unwanted item sent to her home was a gift allegedly from Joy to Wigglesworth, an item that Joy claims he did not send.

Also subsequent to the search of the defendant's office, DiBiasio filed a complaint with the police, claiming that he had been receiving hundreds of unsolicited mail subscriptions at his residence. DiBiasio reported that while he was superintendent, he had disciplined the defendant for a violation of school policies.

On the basis of these facts, the defendant was arrested and charged in three informations with a total of five counts of harassment in the second degree in violation of § 53a-183 (a) (2). The informations allege that the defendant, "with intent to harass and annoy" the complainants, "did communicate by mail with other persons to cause numerous pieces of unsolicit[ed] mail and packages to be received by" the complainants "in a manner likely to cause annoyance and alarm."[6] The defendant filed a motion to dismiss the informations, claiming (1) that the informations were defective because they failed to charge an offense, and (2) that the law defining the offense charged was unconstitutional or otherwise invalid. The defendant based his motion on Practice Book § 814, article first, § 7, of the Connecticut constitution, and the fourth and fourteenth amendments to the constitution of the United States.[7]

---

[6] Some of the informations contain insignificant differences in language in comparison to the language quoted here.

[7] While the motion did not refer to Practice Book § 815, it is apparent that the defendant was invoking that provision. Practice Book § 815 provides in relevant part: "The following defenses or objections, if capable of determination without a trial of the general issue, shall, if made prior to trial, be

The trial court granted the defendant's motion on the ground that the informations failed to charge an offense constituting the conduct proscribed in § 53a-183 (a) (2).[8] The trial court found that in order to establish a violation of § 53a-183 (a) (2), the state must prove that the defendant directly communicated with the person whom he intended to harass, and that the informations charging the defendant with violating § 53a-183 (a) (2) failed to allege such a direct communication. According to the trial court, § 53a-183 (a) (2) "does not encompass within its ambit content-neutral communications made to a party other than the complainant which are not in any way annoying or alarming to such other party. While the defendant's intention may have been to annoy or harass the complainants and their receipt of numerous unsolicited mail order items was, in all likelihood, annoying and possibly alarming, his alleged actions do not constitute criminal conduct." Following the trial court's dismissal of the informations, the state appealed.

On appeal, the state asserts that to establish a violation of § 53a-183 (a) (2), it need not prove that the defendant communicated directly with the persons whom the defendant intended to harass, and that, therefore, its informations did not fail to charge an offense. The defendant disagrees with the state's position and argues that the statute proscribes a defendant only from engaging in direct communication with a victim in an effort to harass the victim. We agree with the state.

To resolve this appeal, we must determine whether § 53a-183 (a) (2) requires the state to prove that a

raised by a motion to dismiss the information . . .

"(2) Defects in the information including failure to charge an offense . . .

"(8) Claim that the law defining the offense charged is unconstitutional or otherwise invalid . . . ."

[8] The trial court did not reach the constitutional issues raised by the defendant. Because the trial court did not reach the constitutional issues, we do not address those issues here.

defendant, with the intent to harass, annoy or alarm another person, directly communicated with that person, or whether the state may also prove a violation of that statute where it demonstrates that a defendant, with the intent to harass, annoy or alarm another person, communicated with a third party. The resolution of this question requires us to engage in statutory construction.

"Statutory construction is a question of law and therefore our review is plenary. . . . Ordinarily, if the language of a statute is plain and unambiguous, we need look no further than the words themselves because we assume that the language expresses the legislature's intent." (Internal quotation marks omitted.) *State* v. *Denby*, 235 Conn. 477, 481, 668 A.2d 682 (1995). Thus, we first must consider whether § 53a-183 (a) (2) is plain and unambiguous.

The statutory language applicable to this case is as follows: "A person is guilty of harassment in the second degree when . . . with intent to harass, annoy or alarm another person, he communicates with a person by . . . mail . . . in a manner likely to cause annoyance or alarm . . . ." General Statutes § 53a-183 (a) (2). We conclude that this language is not ambiguous and that it applies to a person who, with the intent to harass a victim, communicates with a third party by mail in an effort to cause such harassment.

The legislature decreed in § 53a-183 (a) (2) that a person is guilty of harassment in the second degree when with the requisite intent to harass "*another* person, he communicates with *a* person" in a prohibited manner. (Emphasis added.) These words "are to be understood according to the commonly approved usage of the language"; *State* v. *Hufford*, 205 Conn. 386, 392, 533 A.2d 866 (1987); and "must be given their plain and ordinary meaning and be interpreted in their natural

and usual sense unless the context indicates that a different meaning was intended." *State* v. *Grant*, 33 Conn. App. 133, 140, 634 A.2d 1181 (1993). The language of § 53a-183 (a) (2) plainly states that for a defendant to violate that statute, he must first have the intent to harass, annoy or alarm "another" person, i.e., the intended victim, and, second, he must communicate with "a" person, possibly a third party, in a manner likely to achieve his ends. Thus, a defendant is prohibited from intending to harass "another" person and then acting on his intent by communicating with "a" person. The statute by its terms does not require direct communication with the person who is the target of the harassment, and we will "not by construction read into statutes provisions which are not clearly stated." (Internal quotation marks omitted.) *State* v. *Johnson*, 227 Conn. 534, 542, 630 A.2d 1059 (1993). Were we to countenance an interpretation different from that set forth here, we would render words of the statute mere surplusage because we would fail to recognize the distinction made by the legislature that proscribes someone from having an intent to harass "another" person, but prohibits only that he communicate with "a" person. "No word or phrase in a statute is to be rendered mere surplusage." *Rydingsword* v. *Liberty Mutual Ins. Co.*, 224 Conn. 8, 16, 615 A.2d 1032 (1992).

On the basis of our interpretation of § 53a-183 (a) (2), we conclude that the trial court improperly interpreted that statute. Contrary to the finding of the trial court, § 53a-183 (a) (2) does not require the state to prove that the defendant engaged in a direct communication with the person whom he intended to harass. Furthermore, having examined the language of the informations filed by the state in light of § 53a-183 (a) (2), we conclude that those informations did not fail to charge the defendant with the offense of harassment in the second degree. The informations alleged that the

defendant, with the intent to harass and annoy the complainants, communicated by mail with other persons to cause numerous pieces of unsolicited mail and packages to be received by the complainants, in a manner likely to cause annoyance and alarm.

The judgments are reversed and the case remanded with direction to deny the defendant's motion to dismiss the counts alleging a violation of § 53a-183 (a) (2) based on the failure to charge an offense and for further proceedings in accordance with law.

In this opinion the other judges concurred.