[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
These matters come before the court as consolidated cases. Number CV-95-0124195S is an appeal from the doings of an Administrative Agency, the Waterbury Board of Education. Number CV-94-0121828S is an action against Waterbury Board of Education, Edwin D. Bergin, Mayor of Waterbury, and Donald Dineen, Richard O'Connor, and Larry Foz, impartial hearing panel members chosen as such by the parties under General Statutes § 10-151. Per the Court's order the parties filed post-trial supplementary briefs on August 16, 1996.
Although these files are voluminous, the facts forming the basis for these actions are not complicated. The findings of the Impartial Hearing Panel, impaneled under the auspices of General Statutes § 10-151, found that the plaintiff Van E. Snyder was a tenured teacher, holding the position of Principal of Crosby High School within the Waterbury school system.
Beginning in June 1993, in apparent motivation of what may be categorized as a personal vendetta, Mr. Snyder caused to be sent to Assistant Superintendent Charles Joy, Superintendent Joseph M. Sullivan, Assistant Superintendent Foster M. Crawford, "Mrs. R." Mr. "P", "Student S" and "Student D," and former Superintendent Guy Di Biasia, enormous amounts of unrequested mail and solicitations, referred to in the vernacular as "junk mail." Much of the mail came with invoices, charging the addressee for the cost of alleged subscriptions. In one instance, that of Mr. Sullivan, the mailing consisted of at least twenty-two invoices, claiming $947.48 in invoice charges. In the case of Mr. Crawford the number of items for which charges were issued was twenty-five, at invoice charges of $666.18.
On October 25, 1993 Detective Deal of the Waterbury Police Department submitted an arrest warrant, in which applicant Deal, who testified at the hearing before the impartial panel, stated in essence that Snyder admitted to the mailings because "he had CT Page 8482 been subjected to harassment by school officials, who had previously suspended him, and that the mailing to the private citizens was because "a student was giving him problems."
Because of this activity Mr. Snyder was arrested. His case was eventually dismissed by the Superior Court. The State appealed. The Appellate Court reversed, and remanded to the Superior Court (40 Conn. App. 544). The case is now pending in the Superior Court.
On June 27, 1994 the Impartial Panel was convened, despite the protest of Mr. Snyder. On November 28, 1994 the Waterbury Board of Education voted to terminate the contract of employment of the plaintiff.
The plaintiff protested the convening and the proceeding of the Board of Education hearings, as part of his protest of the process itself. The plaintiff alleged, and alleges, that he had entered into a contract with Mayor Bergin, on behalf of the Board of Education, that no proceedings would take place until his criminal arrest proceedings were concluded. He further takes the position that any disciplinary proceedings were required to take place under the provisions of the Charter of the City of Waterbury, rather than under the provisions of General Statutes § 10-151.
General Statutes § 10-151 (e), as it was in effect at the time of these events provided:
 "e The provisions of any special act regarding the dismissal or employment of teachers shall prevail over the provisions of this section in the event of conflict."
 That provision has subsequently been repealed by Public Act 95-58 S2. Hence the determination of the issues of this case are determined by the provisions of this previously existing statute. Therefore if the Charter is in conflict with the procedures of General Statutes § 10-151, the provisions of the charter would prevail.
 "We construe the legislative intent of subsection d of § 10-151, which states that the provisions of any special act regarding the dismissal or employment CT Page 8483 of teachers shall prevail over the provisions of § 10-151 in the event of conflict to be a mandate prohibiting interference with the employment rights of teachers, at the time of their employment, who were governed and protected by special acts such as the Waterbury Charter."
Cammisa v. Board of Education, 175 Conn. 445, 452 (1978). (emphasis in the original)
Section 904 of the Waterbury Charter, captioned "Superintendent of schools." provides, in part, as follows:
 "The superintendent of schools . . . shall assign all principals, assistants and teachers to their respective positions and reassign them or dismiss them from office at his discretion."
 "He shall report in writing at each meeting of the board all appointments, reassignments and dismissals made by him since the previous meeting . . . . Any dismissal by the superintendent shall be final unless rejected by a vote of a majority of the board at the meeting when such dismissal is reported. Notice of dismissal on the part of the superintendent shall be given to the principal, assistant or teacher by the superintendent in writing at least one week before the meeting of the board when the superintendent reports such dismissal."
Charter Section 903 provides as follows:
 (b) Removal for cause; appeals: Effective January 1, 1988 the superintendent, principals, assistants and teachers in office at the time shall hold their office and membership in such department in their present grade, unless promoted, demoted or dismissed by said board of education for cause, provided when any member of said department shall be dismissed by said board he shall have the right to appeal from the action of said board to the superior court for the judicial district of Waterbury . . ." CT Page 8484
Sections 903 and 904 of the Waterbury Charter provides no procedure for a hearing before the Board of Education for the purposes of determining whether the "dismissal by the superintendent shall be final unless rejected by a majority of the board at the meeting when such dismissal is reported." However, the availability of a hearing, so as to protect the employee, may be implied from other provisions of the charter (Sec. 2012d) and by application of constitutional provisions pertaining to the subject of administrative law.
General Statutes § 10-151 (d) provides for a hearing upon the request of the employee, or alternatively before the board, or a subcommittee of the board, or before an "impartial hearing panel," or if the parties mutually agree, before a single impartial hearing officer. Under the statute the board thereafter renders its decision, and a teacher so aggrieved may appeal to the Superior Court.
On May 18, 1994 Roger Damerow, the new Superintendent of Schools, gave written notice to Mr. Snyder, copy to his Attorney John Gesmonde, that he had proposed to the Board of Education that Mr. Snyder's employment be terminated. On June 2, 1994, though protesting the procedure and reserving the right to challenge the procedure, Mr. Snyder requested that the hearing be conducted before an "impartial hearing panel" and appointed Donald Dineen as a panel member, as he would be entitled to do under General Statutes § 10-151 (d).
The panel convened. Mr. Snyder was given a full opportunity to present evidence and testimony at the hearing. "Both parties were represented and were accorded the opportunity to adduce evidence, examine and cross-examine witnesses and make argument." Transcript of findings, P. 12.
This court has reviewed the findings of the panel and determines that both the recommendations of the panel and the factual bases thereof are neither unreasonable nor arbitrary, and are fully supported by the evidence. Likewise the decision of the board, based upon those findings, are reasonable, not arbitrary, and not in abuse of its discretion. The dissent of hearing panel member Dineen is on procedural grounds, on the basis that the Charter would give to the Appeals Court the right to "modify the decision."
Suffice it to say that the plaintiff's contention is a matter CT Page 8485 of procedure rather than of substance in this appeal. This court, upon reviewing the record, finds nothing of substance that would justify modifying or revoking the decision of the board in this particular case. The appellant does not argue or proffer any position whatsoever that the board was unreasonable, arbitrary or in abuse of its discretion in rendering this decision. The appellant's position rests solely on other grounds.
The court determines that there is no conflict between the procedural provisions of the Charter Provisions 903 and 904, and the procedures that were adopted by the board, as outlined in General Statutes § 10-151 (d). In reality the procedures set forth in General Statutes § 10-151 (d) provide for procedural and substantive safeguards far beyond those explicitly set forth in Sections 903 and 904 of the Charter, and they fully comply with the constitutional requirements of notice and an opportunity to be heard. The court notes that in the appellant's brief of August 16, 1996 the appellant questions the constitutionality of the Charter Provisions for dismissal as being "unconstitutional as a violation of state and federal due process requirements", yet proffers to this court that those procedures, rather than the procedures of General Statutes § 10-151, should be utilized. That appears to be a somewhat self-defeating argument.
The court determines that the procedures utilized by the board in this instance are not in conflict with the Charter and are totally appropriate for the board to have determined this matter. For the reasons set forth herein the Court dismisses the administrative appeal, Case #CV-95-0124195S.
 II
The plaintiff further alleges, in the second of these consolidated suits, that he had a contract with the board of education, through Mayor Bergin, that no disciplinary hearing would take place and that he would continue to receive his full pay until his criminal charges were disposed of.
That action, Case No. 94-0121828S, was commenced as an action for a permanent injunction against the Waterbury Board of Education, Mayor Bergin, Donald Dineen, Richard O'Connor and Larry Foy, the latter three being the impartial hearing panel. The action was commenced by service of process July 26 and 27, 1994, prior to the date of the convening of the Impartial Hearing Panel. This court, Sylvester, J., by decision of August 30, 1994 CT Page 8486 denied the application for a temporary injunction. The plaintiff thereafter withdrew the complaint against Deneen, O'Connor and Foy as of November 2, 1994. The plaintiff then moved to file an amended complaint to delete any reference to Deneen, O'Connor and Foy. The new complaint seeks money damages against Bergin and the Waterbury Board of Education.
The complaint was answered January 23, 1995 and the matter then went to trial as a contested case.
The thrust of the plaintiff's claim is that Mayor Bergin acting under color of state and municipal law, Charter, ordinance, regulation, custom or usage suspended the plaintiff from his high office of high school because of his arrest for harassment "until these criminal matters are resolved," and that said suspension would be with pay and without prejudice. That the Board honored the agreement for seven months and then commenced the disciplinary proceeding which resulted in dismissal at a time when the criminal case was still pending.
At first glance this would appear to be a claim under General Statutes § 46a-58, the Connecticut Civil Rights Act, or under the Federal Civil Rights Act, 42 U.S.C. § 1983. The plaintiff does not pursue any such claim in his brief or in any presentation of evidence. To the contrary, the plaintiff claims that he is entitled to the benefit of what he claims to be an agreement with Mayor Bergin.
The essence of the argument is that Mayor Bergin contracted with him that the Board of would take no further steps as concerns disciplinary action until the criminal proceedings were disposed of. At this time, now some three years after the date of arrest, the criminal charges have not yet been disposed of, as the criminal case has been remanded by the Appellate Court for further proceedings.
It is clear that Mayor Bergin was not acting for himself when he entered into discussions with the plaintiff's attorney as concerns suspension with pay as pertains to the plaintiff. To the extent that the plaintiff claims a contract arising out of those discussions, it is not claimed that Mayor Bergin was acting for himself, as a principal or that he was acting as an undisclosed
agent. Hence Mayor Bergin would have no personal responsibility as concerns any such "contract." See Whilloch, Inc. v. Manly,123 Conn. 434, 437 (1937). The plaintiff cannot claim a personal CT Page 8487 contract with Mayor Bergin, but rather he claims a contract between himself and the Board of Education, which he seeks to enforce against the Board of Education. It is not claimed that Mayor Bergin did anything wrong, but rather that his activity would have effectively bound the Board of Education to an agreement not to take any action on the suspension until the criminal charges were disposed of.
As concerns the Board of Education the plaintiff claims that the Mayor, under Charter Provision Sec. 2012 of the Waterbury Charter, section (e) has the power, as mayor, to control and supervise the doings of the Board of Education. However the Charter Section 2012(d) gives to the mayor the power "To suspend, pending hearing, . . . any appointed official." These sections, read together, do not, however, give to the mayor the right or the power to suspend with pay, and additionally to either unilaterally suspend indefinitely or to unilaterally abrogate the hearing process. The power to effectuate an emergency suspension is similar to the right given to the Board of Education or to the superintendent, by statute, the power "to suspend a teacher from duty immediately when serious misconduct is charged without prejudice to the rights of the teacher as otherwise provided in this section." See General Statutes §10-151 (d). The plaintiff also and alternatively relies on Section 902(1) of the Charter claiming that the mayor was acting in his capacity as ex officio chairman of the Board of Education.
 "Said department shall be under the control of a board of education of ten members, who shall be elected as hereinafter provided, and the mayor, who shall be chairman, ex officio, of such board."
However, Charter Section 903(b) — "Removals for cause; appeals" gives to the Board of Education, the right to overrule, upon majority vote of the board, any dismissal which is reported to it by the Superintendent of Schools (Charter Provision 904.)
The Charter does not give to the mayor the right or the power to affect or control the ultimate dismissal function, whether or not he is acting as "Chairman, ex officio" of the board. That initiating function is vested in the Superintendent of Schools, per Sec. 904 of the Charter, and the determinative function is vested in "a majority of the board of education", per the CT Page 8488 provisions of Charter Provisions 904 and 903. No charter provision or provision of law gives to the chairman of the Board, regular or ex officio, the unilateral power or right to enter into a claimed "contract" of this nature so as to bind the Board of Education.
It is argued that the Mayor's power arises out of a temporary substitution for the Superintendent of Schools because the superintendent was a victim of the plaintiff's activities, and hence has a conflict. Yet that situation would have come to an end when Roger A. Demerow, Superintendent of Schools, determined that the circumstances of pay without work must come to an end, and noticed the plaintiff for a board hearing on May 10, 1994. At best, the mayor's activity can only be considered as a temporary
measure, arguably authorized by Sec. 2012(d) of the Charter, but at most similar to the emergency prerogatives given to boards of education or to the superintendent under General Statutes §10-151 (d). Ironically, the only justification for interim pay without work would appear to be under the emergency provision of General Statutes § 10-151 (d), which statute the plaintiff specifically disavows as being applicable to these circumstances.
Lastly, the plaintiff claims, in this breach of contract action, as against the Board of Education, that even if Mayor Bergin did not have the authority to enter into an indefinite suspension with pay agreement until the "criminal charges are disposed of", yet the Board of Education should be estopped
from failure to continue making salary payments to the plaintiff beyond the date of its decision.
The mayor had no authority to enter into a contract of this alleged nature for and binding upon the Board of Education.
 "It has consistently been the law of this state that a municipality cannot be estopped by the unauthorized acts of its officers or agents."
Zoning Commission v. Lescynski, 188 Conn. 724, 733 (1982).
Although there may be some rare circumstances whereby the courts have recognized estoppel, or laches, against a municipality, or a government agency such as the Board of Education, yet such circumstances are rare indeed. CT Page 8489
 ". . . that delay must have prejudiced the party claiming it."
Bianco v. Darien, 157 Conn. 548, 556 (1969).
 "As we have previously noted the defendants must show not only unjustifiable inducement but also reliance of such a nature that it would be `legally inequitable to enforce the regulations.'"
West Hartford v. Rechel, 190 Conn. 114, 124 (1983).
The court finds that there was no prejudice to the plaintiff. The plaintiff proffers that had the forebearance with pay not taken place he may have been able to bargain for a less serious disciplinary action. Or that the Union may have been able to prevent his discharge through some undefined application of a union contract. No proof is offered to support these conclusions. No evidence is offered to the effect that exculpatory information was withheld from him because of a criminal proceeding or that he was not given an adequate opportunity to investigate the charges against him. The contention of the plaintiff is totally without support in the evidence. In retrospect he was advantaged by receipt of many months of pay without work under circumstances where, in retrospect, dismissal was inevitable.
The plaintiff's claim of double jeopardy, by virtue of both a criminal and an administrative proceeding is no different than a motor vehicle license suspension and a criminal proceeding arising out of the same activity. Such claims have been specifically rejected by the Connecticut Supreme Court.
The plaintiff did not testify in this action, and there is no substantial evidence to support the plaintiff's contentions as to breach of contract as against Mayor Bergin or the Waterbury Board of Education.
For the reasons set forth herein judgment enters for the defendant Edward D. Bergin and for the defendant Waterbury Board of Education in this action, Case #CV-94-0121828S.
L. Paul Sullivan, J. CT Page 8490