STATE OF CONNECTICUT *v.* DARRYL CUMMINGS
(AC 14275)

O'Connell, C. J., and Foti and Heiman, Js.

Argued April 22—officially released September 9, 1997

*James K. Filan, Jr.*, with whom, on the brief, was *Craig S. Meuser*, law student intern, for the appellant (defendant).

*John A. East III*, assistant state's attorney, with whom, on the brief, were *Donald A. Browne*, state's

attorney, and *Joseph J. Harry*, assistant state's attorney, for the appellee (state).

*Opinion*

FOTI, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of stalking in the first degree in violation of General Statutes § 53a-181c (a) (2), stalking in the second degree in violation of General Statutes § 53a-181d, two counts of harassment in the second degree in violation of General Statutes § 53a-183 (a) (3), disorderly conduct in violation of General Statutes § 53a-182 (a) (2), and criminal violation of a protective order in violation of General Statutes § 53a-110b. On appeal, the defendant claims that three statutes under which he was charged and convicted, §§ 53a-181d, 53a-182 (a) (2) and 53a-183 (a) (3), are facially vague and, therefore, unconstitutional under both the state and federal constitutions.[1] He also claims that the trial court improperly (1) admitted evidence of his prior criminal convictions, (2) failed to deliver limiting instructions concerning that evidence, (3) instructed on the essential elements of the stalking charges, and (4) imposed a sentence without a court-ordered psychiatric evaluation. The defendant also claims that the evidence presented at trial was insufficient to support his conviction for stalking in the first and second degree, harassment in the second degree and criminal violation of a protective order. We reverse the judgment in part and affirm it in part.

The jury reasonably could have found the following facts. The defendant and the victim were involved in a romantic relationship for two years. The victim ended the relationship on October 2, 1992, and left for a vacation the next day. On October 16, 1992, upon returning

[1] The defendant claims to have been deprived of a fair trial under article first, § 8, of the Connecticut constitution and the fourteenth amendment to the United States constitution.

home from her trip, the victim went to dinner with the defendant. She told the defendant that that meeting was not a date and that their romantic relationship was over. The defendant, nevertheless, pressed for reconciliation.

Subsequently, the defendant began to telephone the victim at her family home and at her workplace. He also called and visited her friends and family to inquire about the victim and to plead with them to listen to his side of the story.

In November, 1992, the defendant confronted the victim when she got into her car as she left work. As she turned the key in the ignition, the defendant jumped into her car. He shoved a bank card in her face and told her to withdraw money from his account to reimburse her for a debt he owed her. The victim screamed and ordered the defendant out of her car and he left. The victim reported the incident to the Wilton police department, but did not have the defendant arrested.

On January 27, 1993, the defendant went to a restaurant where the victim and three friends were having dinner. He remained at the restaurant until they left. Although he lived in the opposite direction from where the victim lived, the defendant followed them almost to the victim's home.

On January 28, 1993, the defendant appeared at the gym where the victim was a member. As she left the gym, the defendant approached her, carrying a flower, and pleading with her to listen to him. The victim ignored him. The defendant grabbed her arm and did not permit her to get into her car. She ran back to the gym and found someone there to escort her to her car. When she left the gym the second time, she saw the defendant's truck drive past her and out of the parking lot. On her way home, she noticed that his truck was one or two cars in front of her. To avoid further confrontation, the victim went to a girlfriend's house. She was

upset and related the incident to her friend. The defendant drove by her friend's house and parked down the street. The friend drove the victim to the victim's parents' house. The victim later filed a complaint with the Trumbull police department, and the defendant was arrested.

The victim obtained a protective order against the defendant based on these incidents. The protective order prohibited the defendant from telephoning the victim or coming within 1000 feet of her. It further prevented the defendant from imposing any restraints on the person or liberty of the victim, and ordered that the defendant refrain from threatening, harassing, assaulting, molesting or sexually assaulting the victim and that he refrain from entering the family dwelling or the dwelling occupied by the victim.

In June, 1993, the victim and a girlfriend were at a bar. The defendant was there also and followed her around the bar, waving and staring at her. The victim eventually left the bar with her friend. The next day, the victim went to a park in Trumbull with her friend. The defendant drove into the park, turned around and drove out.[2] The victim and her friend went to the park again the following day. The defendant again drove into the park, turned around and drove out.

Also in June, 1993, the victim went to a bar in Bridgeport. As she prepared to pay her bill and leave, she noticed the defendant leaving. A restaurant employee informed her that the defendant had paid her bill. The victim then went to another bar to meet some friends. The defendant also went there and approached the victim. He was crying and pleading with her to talk to him.

---

[2] The victim was familiar with the defendant's truck, a blue Chevrolet Blazer. She heard the truck's squeaky brakes and recognized the vehicle as it approached.

The victim shouted an obscenity at him and left with a friend.

In July, 1993, the defendant telephoned the victim at work and explained that he was going to send her the money he owed her. She hung up as soon as she recognized his voice.

In August, 1993, the victim moved into an apartment with a friend. The two women began to receive a number of hang up telephone calls. On August 29, 1993, the defendant telephoned the victim at least twelve consecutive times. The victim again filed a complaint with the Trumbull police department. While a police officer was at the victim's apartment, the defendant passed by in his truck. The defendant was arrested as a result of that incident.

The next incident occurred on October 16, 1993. The victim was a bridesmaid in a friend's wedding. The defendant had not been invited. The victim left the wedding in a limousine and noticed the defendant's truck a few cars behind her. He eventually passed the limousine and appeared at the reception, but left before the victim arrived.

On October 29, 1993, the victim and her roommate hosted a Halloween party. The defendant telephoned their apartment. The victim's roommate answered and recognized the defendant's voice. He stated that "this is [the victim's] worst nightmare" before hanging up the telephone.

In March, 1994, the defendant again telephoned the victim at work. He claimed that he was going to pay her the money he owed her. The victim hung up, left work and filed a complaint with the Wilton police department.

## I

The defendant claims that §§ 53a-181d, 53a-182 (a) (2) and 53a-183 (a) (3) are unconstitutionally vague.[3] Because he did not preserve this claim at trial, he seeks review pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[4]

"The doctrine [of vagueness] requires statutes to provide fair notice of the conduct to which they pertain and to establish minimum guidelines to govern law enforcement." *State* v. *Indrisano*, 228 Conn. 795, 802, 640 A.2d 986 (1994). Our Supreme Court based its analysis in *Indrisano* on the three standards set out by the United States Supreme Court for evaluating vagueness. "First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. . . . [A] law forbidding or requiring conduct in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates due process of law. . . .

[3] In raising his vagueness claim, the defendant relies on his rights to due process under the fourteenth amendment to the United States constitution and article first, § 8, of the Connecticut constitution. Although the defendant invokes the due process provision of the state constitution, he provides no separate analysis under the state constitution. See *State* v. *Crafts*, 226 Conn. 237, 243 n.3, 627 A.2d 877 (1993). Moreover, the state and federal due process provisions are coextensive and afford equivalent levels of protection. *Langan* v. *Weeks*, 37 Conn. App. 105, 118 n.14, 665 A.2d 771 (1995). We, therefore, decline to analyze the claim separately.

[4] Our Supreme Court established that "a defendant can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." *State* v. *Golding*, supra, 213 Conn. 239–40.

"Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory applications. . . . Therefore, a legislature [must] establish minimal guidelines to govern law enforcement. . . .

"Third, but related, where a vague statute abut[s] upon sensitive areas of basic First Amendment freedoms, it operates to inhibit the exercise of [those] freedoms." (Citations omitted; internal quotation marks omitted.) Id., 802–803.[5]

## A

Section 53a-181d (a) provides: "A person is guilty of stalking in the second degree when, with intent to cause another person to fear for his physical safety, he wilfully and repeatedly follows or lies in wait for such other person and causes such other person to reasonably fear for his physical safety." The defendant claims that the statute is facially vague because the terms "repeatedly," "follows," and "lies in wait" are ambiguous and are not statutorily defined. We are unpersuaded.

The claim that the statute is unconstitutional on its face is foreclosed by our decision in *State* v. *Marsala*, 44 Conn. App. 84, 97, 688 A.2d 336, cert. denied, 240 Conn. 912, 690 A.2d 400 (1997). In *Marsala*, we adopted the Superior Court's decision in *State* v. *Culmo*, 43 Conn. Sup. 46, 67, 642 A.2d 90 (1993), stating that " '[o]n consideration of [§ 53a-181d] in its entirety, it cannot be said that a person of common understanding would fail to understand what conduct is prohibited. Section

---

[5] The defendant clearly did not make a first amendment claim and conceded during oral argument that no such rights were violated.

53a-181d is relatively narrow in scope. It applies only to those who act with the specific intention of causing others to fear for their physical safety. The fear for one's physical safety must be reasonable. The conduct must be undertaken wilfully, not mistakenly, and it must occur repeatedly. The statute on its face does not implicate speech or expression in any way; it criminalizes conduct only when undertaken with the requisite intent. The court concludes that any ambiguities in the statute's language are not so significant as to render it void for vagueness.' " *State* v. *Marsala,* supra, 97.

The defendant acknowledges our language in *Marsala,* but claims that his argument is based on the second prong of the vagueness doctrine—the danger of an arbitrary and discriminatory application—and that neither *Marsala* nor *Culmo* sufficiently addresses this aspect of the doctrine.

In *Culmo,* however, the court addressed the statute under the second prong of the vagueness standard. "A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, if it is does not clearly indicate what conduct is criminal and what is not." *State* v. *Culmo,* supra, 43 Conn. Sup. 59. The *Culmo* court stated that "in order to obtain a conviction [under § 53a-181d], the state must prove all of the following elements beyond a reasonable doubt: (1) that the perpetrator acted with intent to cause another person to fear for his or her physical safety; (2) that the perpetrator acted wilfully; (3) that the perpetrator acted repeatedly; (4) that the perpetrator followed or lay in wait for the other person; and (5) that the perpetrator caused the other person to reasonably fear for his or her physical safety." Id., 60. The court concluded that "[t]he jury must view the situation from the perspective of the defendant. . . . [H]owever . . . the defendant's belief ultimately must be found to be reasonable. . . . There

is no reason to conclude that the standard to be applied in the context of stalking victims would be significantly different from the subjective-objective standard used in the context of self-defense cases . . . ." (Citations omitted; internal quotation marks omitted.) Id., 65. The court effectively analyzed the language of the statute and determined that it provides sufficient guidelines to prevent arbitrary enforcement. Moreover, we implicitly rejected a claim that the statute violates the second prong of the vagueness standard set forth in *Marsala* by concluding that the statute was constitutional. We conclude, therefore, that § 53a-181d is not unconstitutionally vague.

B

Section 53a-182 (a) provides in relevant part that "[a] person is guilty of disorderly conduct when, with intent to cause inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he . . . (2) by offensive or disorderly conduct, annoys or interferes with another person . . . ." The defendant claims, citing *State* v. *Indrisano*, supra, 228 Conn. 795, that the statute is unconstitutional on its face. We agree.

In *Indrisano*, our Supreme Court held that § 53a-182 (a) (2) was impermissibly vague on its face because the language of subdivision (2), "by offensive or disorderly conduct, annoys or interferes with another person," failed to specify a standard of conduct. Id., 819. Specifically, the court determined that "[c]onduct that annoys some people does not annoy others. Thus, the ordinance is vague, not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all. As a result, men of common intelligence must necessarily guess at its meaning. . . . Because the Supreme Court of the United States has held that the term annoying, when

used to proscribe conduct, is unconstitutionally vague, we are bound as a matter of federal due process to conclude that the term annoy as used in § 53a-182 (a) (2) is similarly vague." (Citation omitted; internal quotation marks omitted.) Id., 816. Furthermore, the court stated that the other component of subdivision (2), " 'offensive or disorderly conduct' is equally facially vague . . . . Conduct that is 'offensive' to or would be considered 'disorderly' by some people would not be so considered by others." Id., 816–17.

The court, however, interpreted the language "to provide constitutional content *for the future.*" (Emphasis added.) Id., 817. It found the language to mean "conduct that is grossly offensive, under contemporary community standards, to a person who actually overhears or sees it, disturbs or impedes the lawful activity of that person." Id., 819. The court nevertheless concluded that the defendant "could not have anticipated the extent of [its] construction of the statutory language at the time of his prosecution" and reversed the conviction as to a violation of § 53a-182 (a) (2). Id.

The judicial gloss was placed on the statute in *Indrisano* subsequent to the defendant's conduct in this case, January 28, 1993. Prior to the decision in *Indrisano,* the term "annoy" had not been appropriately defined by our courts. The defendant claims that, therefore, he could not have had notice of what conduct the law prohibits.

In effect, by ruling that § 53a-182 (a) (2) is unconstitutionally vague on its face, our Supreme Court determined that the statute does not have an unmistakable core meaning of prohibited conduct. "A statute that is impermissibly vague in all its applications is vague, not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of

conduct is specified at all. . . . Such a provision simply has no core." (Internal quotation marks omitted.) Id., 804. Any conviction pursuant to § 53a-182 (a) (2), where the conduct occurred prior to the judicial gloss, therefore, would be unconstitutional. The defendant's conviction under § 53a-182 (a) (2) must be reversed.

## C

Section 53a-183 (a) provides in relevant part that "[a] person is guilty of harassment in the second degree when . . . (3) with intent to harass, annoy or alarm another person, he makes a telephone call, whether or not a conversation ensues, in a manner likely to cause annoyance or alarm." The defendant argues, citing *State* v. *Indrisano*, supra, 228 Conn. 795, that the statute is unconstitutionally vague because of the statutorily undefined term "annoy." Essentially, the defendant makes the same claims regarding § 53a-183 (a) (3) that he did for § 53a-182 (a) (2). We do not agree.

The state claims that we cannot review the defendant's claim that the statute is facially vague because the defendant did not identify the constitutionally guaranteed interest allegedly abridged and, as a result, the claim fails to satisfy the third prong of the *Golding* standard. We disagree. "To enable us to review a claim that a statute is facially vague, the record needs to reflect only the fact that the defendant was convicted under the statute in question. To enable us to review a claim that a statute is vague as applied, the record must further reflect the conduct that formed the basis of the defendant's conviction." *State* v. *Indrisano*, supra, 228 Conn. 800. On the basis of the record before us, we are able to review the statute on its face and as applied.

Section 53a-183 (a) (3) contains the term "annoy," as does § 53a-182 (a) (2), which did not receive the

judicial gloss of *Indrisano* until after the defendant engaged in the conduct at issue here. Both statutes have a mens rea requirement set out in subsection (a) of their respective provisions.[6] While § 53a-182 (a) (2) used the word "interferes" as an alternative to "annoys," § 53a-183 (a) (3) contains the word "alarm" as an alternate to the phrase "cause annoyance."[7] It is well established that "[i]f a statute or regulation does not sufficiently define a term, it is appropriate to look to the common understanding of the term as expressed in a dictionary." *State* v. *Indrisano*, supra, 228 Conn. 809; see General Statutes § 1-1 (a). "Alarm" is defined as "to strike with fear: fill with anxiety as to threatening danger or harm . . . ." Webster's Third New International Dictionary.

In light of our Supreme Court's decision in *Indrisano*, our analysis does not end here. Unlike the disorderly conduct statute in *Indrisano*, judicial gloss has been applied to the language of § 53a-183 (a) (3). We have previously examined the statutory language of § 53a-183 (a) (3). See *State* v. *Snyder*, 40 Conn. App. 544, 672 A.2d 535, cert. denied, 237 Conn. 921, 676 A.2d 1375 (1996); *State* v. *Lewtan*, 5 Conn. App. 79, 497 A.2d 60 (1985); *State* v. *Bellamy*, 4 Conn. App. 520, 495 A.2d 724 (1985). Although we did not address the issue of vagueness in those cases, we have determined that the language, "in a manner likely to cause annoyance or alarm," is not ambiguous. General Statutes § 53a-183 (a); see *State* v. *Snyder*, supra, 551. "Our adoption of this interpretive gloss provides a sufficient core of

---

[6] "We have . . . previously stated that a scienter requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice to [a defendant] that his conduct is proscribed." (Internal quotation marks omitted.) *State* v. *Dyson*, 238 Conn. 784, 798, 680 A.2d 1306 (1996).

[7] It is a well settled rule of statutory construction that the meaning of a vague word may be ascertained by reference to the meaning of words associated with it in the same statute. *State* v. *Szymkiewicz*, 237 Conn. 613, 618, 678 A.2d 473 (1996).

meaning to remedy any facial vagueness that might otherwise exist." *State* v. *Dyson*, 238 Conn. 784, 799, 680 A.2d 1306 (1996). We therefore conclude that the statute is not unconstitutionally vague on its face.

The statute is also not unconstitutionally vague as applied to the defendant's conduct. The defendant has not made a plausible argument that he acted in reliance on the belief that his conduct was lawful or that a person of ordinary intelligence would have a reason to know that he was engaging in prohibited conduct. See *State* v. *Payne*, 240 Conn. 766, 779, 695 A.2d 525 (1997). Moreover, the defendant had been convicted previously of violating the statute and has clearly been put on notice of the conduct proscribed by the statute. We therefore conclude that § 53a-183 (a) (3) is not unconstitutionally vague as applied to the defendant's conduct.

## II

The defendant claims that the trial court abused its discretion in permitting inquiry into his prior convictions for harassment. He claims that the state was able to delve into specific details concerning the defendant's bad acts and thereby so prejudiced the defendant as to warrant a new trial. We disagree.

"The trial court is charged with the responsibility to exclude evidence where its prejudicial tendency outweighs its probative value." *State* v. *Graham*, 200 Conn. 9, 12, 509 A.2d 493 (1986). We review this consideration to determine whether the trial court abused its discretion. *Tuite* v. *Stop & Shop Cos.*, 45 Conn. App. 305, 310, 696 A.2d 363 (1997).

The state introduced the prior conviction evidence to cast doubt on the reliability of a witness for the defendant. The defendant introduced the testimony of Lorenzo Curcio, his friend and roommate, regarding the

defendant's character. Curcio testified that the defendant's alleged conduct was "[a]bsolutely out of character." Upon conclusion of the direct examination, the state requested permission to introduce evidence of the defendant's multiple convictions for harassment. The trial court allowed the evidence, determining that it was relevant to Curcio's opinion of the defendant's specific character traits. The state then introduced the evidence to impeach the Curcio's testimony.[8]

"There is a distinction between the prosecution's use of specific acts in rebuttal to disprove the trait in question and the prosecution's use of specific acts in the cross-examination of a character witness. When a character witness has given his opinion as to a particular

---

[8] Curcio testified as follows on cross-examination by the prosecutor:

"A. What I believe I said was that maybe suggestion of a violent nature would be out of his character. He's not a violent type person to me though.

"Q. Okay. Were you aware of the fact that [on] January 26, 1989, he was arrested and convicted of two counts of harassment?

"A. No.

"Q. Were you aware of February 27, 1989, when the defendant was convicted of three counts of harassment?

"A. No.

"Q. Were you aware of the fact [that on] March 25, 1989, the defendant was convicted of two counts of harassment?

"A. No.

"Q. Were you aware of the fact that on July 28, 1989, the defendant was convicted of two counts of harassment?

"A. No.

"Q. Again on July 28, 1989, [that] he was convicted of another count of harassment?

"A. No.

"Q. Were you aware of the fact that after these convictions the defendant contacted the same victim again? . . .

"A. No.

"Q. Based on this new information I just read to you, a total of eleven counts of harassment, contacted the victim after the convictions, can you now state to this jury that it's still out of character?

"A. Yes. From my experience with [the defendant] that would still be out of character. From what I know from him, from what I've observed, I'm very surprised to hear that, as a matter of fact."

trait, the state may cross-examine that witness concerning specific acts, not to prove the truth of such facts, but to test the credibility of the character witness by ascertaining his good faith, his source and amount of information and his accuracy." (Internal quotation marks omitted.) *State* v. *Turcio*, 178 Conn. 116, 126, 422 A.2d 749 (1979), cert. denied, 444 U.S. 1013, 100 S. Ct. 661, 62 L. Ed. 2d 642 (1980).

Furthermore, the state made only minimal reference to the convictions. The questions on cross-examination did not include details of the previous convictions beyond the dates of those convictions. In its closing argument, the state mentioned the convictions again, but requested the jury to consider the evidence for its effect on the victim's state of mind and to cast doubt on Curcio's reliability and veracity as a character witness.[9] We conclude, therefore, that the record in the present case reveals no abuse of the discretion vested in the trial court.

### III

The defendant next argues that the trial court's failure to provide the jury with a limiting instruction regarding the evidence of the defendant's prior convictions was improper. He seeks review pursuant to the plain error doctrine of Practice Book § 4061. This claim is without merit.

"The defendant's counsel is ordinarily under an obligation to request such a limiting instruction." *State* v. *Johnson*, 188 Conn. 515, 521, 450 A.2d 361 (1982). Yet,

---

[9] The prosecutor mentioned the previous convictions on two occasions during closing argument. First, referring to the victim's testimony, he stated: "She knew about his background . . . . He had done time; he was framed; those were the same things for harassment." Second, referring to the cross-examination of Curcio, the prosecutor stated: "And after I asked him about the eleven convictions for harassment, and after those convictions [the defendant] still contacted the victim, would his opinion change. [Curcio] said, 'No' without reservation or hesitation. Is that reasonable?"

to vitiate the danger that the jury will misuse the evidence and infer improperly that the defendant committed the charged offense because he had committed other crimes in the past, the trial court is required, sua sponte if necessary, to instruct the jury as to the limited purpose for which such evidence is to be admitted and considered.

The trial court instructed the jury that the evidence of the defendant's prior convictions was to be used for a limited purpose. At the time the evidence was introduced by the state, the court cautioned the jury that it was admitted only as to the victim's state of mind concerning her fear.[10] Furthermore, in its final instructions, the trial court reminded the jury that the evidence of the prior convictions could be evaluated for only a limited purpose.[11] We conclude, therefore, that the trial court properly instructed the jury on the limited purposes of such testimony.

[10] The court cautioned the jury: "The evidence you have just heard and the question that was asked by [the prosecutor], that evidence was to show —and the purpose of it was to show the witness' state of mind at the time that she received that particular information and at the time she received that letter what was her state of mind and that state of mind was based upon information she had received from the defendant. The information she received from the defendant and the state of mind that she had, it is not relevant as to whether those facts were true or not. Therefore, you cannot consider this element—this evidence for the truth of the statements the defendant had made, that is, the defendant has stated in this particular situation, according to this witness, he had committed acts before, that he had been convicted of those acts, whatever else the witness said. You cannot regard that as a fact. That is not a fact. You cannot consider this evidence for the truth of those particular statements, but you can consider those facts as to the mental state of the witness and what effect that mental state would have on her at the time she read this particular letter. For that, you may consider that evidence."

[11] The court cautioned the jury: "Therefore, the state of mind of [the victim] is a relevant consideration. You are to consider the testimony that [the victim] knew of the defendant's criminal record only for the purpose as it relates to her state of mind. You are not entitled to consider that testimony and that evidence to prove the truth of whatever may be the defendant's criminal record."

## IV

The defendant also claims that the trial court improperly instructed the jury regarding the stalking charges. He claims that the correct standard for the jury to determine the reasonableness of the victim's fear of harm is strictly an objective standard. We do not agree.

The standard to be applied in determining the reasonableness of the victim's fear in the context of the crime of stalking is a subjective-objective one. See *State* v. *Marsala,* supra, 44 Conn. App. 95–96; *State* v. *Culmo,* supra, 43 Conn. Sup. 65. The trial court properly instructed the jury to apply a dual subjective-objective standard to determine the reasonableness of the victim's fear of harm.[12]

The defendant also claims that the trial court's instruction was inadequate because it failed to define explicitly the term "occasion" for purposes of determining whether the defendant had satisfied the "repeated" element of the stalking charges.

After highlighting other examples, the court stated that "[t]here are only three purposes that you can consider them . . . . First, the state of mind of [the victim], two, the credibility of any witnesses who testified concerning that evidence, and three, the intent of the defendant . . . ."

[12] The trial court instructed in relevant part as follows: "The fifth element of stalking in the second degree is that the defendant caused [the victim] to reasonably fear for her physical safety. As I have already defined fear for her physical safety to mean that she feared bodily harm could come to her. The state must then prove beyond a reasonable doubt that [the victim's] fear was reasonable. This requires a two step process in the fifth element which I will call a subjective test and an objective test. As to the subjective test, the situation and the facts must be viewed from the viewpoint of [the victim]. Did she in fact fear for her physical safety? If the answer to that question is no, you must find the defendant not guilty. If the answer to that question is yes, you must then apply the objective test. Was that fear reasonable? You must answer that question not from the viewpoint of [the victim], but from what a reasonable person under the circumstances then and there existing would view. This is the objective test. You must ask yourself the question under all the circumstances then present, can I find that the fear was reasonable? The state must prove beyond a reasonable doubt that both questions are answered in the affirmative to satisfy this fifth element of stalking in the second degree."

In examining a challenge to a trial court's instructions to a jury, we will look at the charge as a whole rather than consider particular language in isolation. See *State v. Palmer*, 206 Conn. 40, 46, 536 A.2d 936 (1988). "It is well established that individual jury instructions are not to be judged in artificial isolation, but must be viewed in the context of the overall charge. *Cupp* v. *Naughten*, 441 U.S. 141, 146–47, 94 S. Ct. 396, 38 L. Ed. 2d 368 (1973); *State* v. *Silano*, 204 Conn. 769, 773, 529 A.2d 1283 (1987); *State* v. *Dolphin*, 195 Conn. 444, 451, 488 A.2d 812, cert. denied, 474 U.S. 833, 106 S. Ct. 103, 88 L. Ed. 2d 84 (1985)." *State* v. *Palmer*, supra, 46. Thus, we consider the defendant's assertions that the trial court's instructions were improper in light of the entire charge.

A jury charge must be considered from the standpoint of its effect on the jury in guiding it to a proper verdict. *State* v. *Delgado*, 13 Conn. App. 139, 145, 535 A.2d 371 (1987). The court's instruction should give the jury a clear understanding of the issues presented, under the offenses charged and on the evidence presented. Id.; see also *State* v. *Villafane*, 45 Conn. App. 110, 115, 694 A.2d 802 (1997). Our review of the whole charge[13] leads us to conclude that the trial court's instruction was proper and that it was not reasonably possible that the

---

[13] The trial court instructed in relevant part as follows: "The third element of stalking in the second degree is that the defendant acted repeatedly. Our law again has no specific definition of the word, 'repeatedly,' and therefore, we must consult the ordinary definition. Webster's Ninth Collegiate Dictionary defines repeatedly as meaning again and again. Acting repeatedly in the context of this particular statute, stalking in the second degree means precisely what the commonly approved usage of the word suggested; acting on more than one occasion.

"An isolated act of following or lying in wait cannot constitute stalking. The statute does not attempt to place the boundaries of time or space around a prescribed repetitive conduct. That is your function as finders of the fact. Again, you must find the state has proven beyond a reasonable doubt this third element of stalking in the second degree for you to find the defendant guilty. Otherwise, you must find the defendant not guilty."

jury was misled or that an injustice resulted by virtue of the charge. The trial court's instructions did not violate the defendant's due process rights.

## V

The defendant next claims that the evidence was insufficient to support his conviction for certain of the crimes charged. We are unpersuaded.

"The two part test for evaluating the sufficiency of the evidence in a jury trial is well established. First, the reviewing court construes the evidence presented at trial in a light most favorable to sustaining the verdict. . . . The reviewing court then determines whether the jury could have reasonably found, on the basis of the facts established and the inferences reasonably drawn from them, that the cumulative effect of the evidence established guilt beyond a reasonable doubt. . . . In conducting this review, the probative force of the evidence is not diminished where the evidence, in whole or in part, is circumstantial rather than direct." (Citations omitted.) *State* v. *Wagner*, 32 Conn. App. 417, 429–30, 629 A.2d 1146, cert. denied, 228 Conn. 912, 635 A.2d 1231 (1993).

## A

The defendant asserts that one cannot be guilty of stalking in the first degree without having committed stalking in the second degree and that the evidence was insufficient for him to have been convicted of stalking in the second degree. He maintains that the evidence was insufficient to establish that he intended to cause the victim to fear for her physical safety, that he committed repeated acts of following or lying in wait or that the victim's fear was reasonable.

We see no valid purpose in reiterating the evidence presented at trial and analyzing that evidence, along with all reasonable inferences the jury could have

drawn from that evidence, to show that the evidence was not insufficient to sustain both convictions. Evidence is not insufficient merely because it is conflicting or inconsistent. *State* v. *Marsala*, supra, 44 Conn. App. 96. The jury is free to determine the credibility of witnesses and the weight to give evidence. Id. The jury, therefore, was free to reject the defendant's testimony as incredible and to accept the testimony of the state's witnesses, including that of the victim, as worthy of belief.

## B

In claiming that the evidence was insufficient to sustain the conviction for harassment in the second degree as charged in count two of the information, the defendant claims that the information, charging that the harassing conduct occurred from October 2, 1992, through January 27, 1993, covered too broad a time period to support the conviction. He also alleges, in support of his claim that the evidence was insufficient, that he and the victim had "a somewhat continuing relationship during that time."

The record does not disclose that the defendant sought to compel the state to be more specific as to the dates of the alleged offenses. The defendant does not claim on appeal, nor does he appear to have alleged at trial, that he was prejudiced by the manner in which he was charged. He neither claimed an alibi defense nor sought by way of an offer of proof to demonstrate that he was harmed by this now alleged "too broad" a time period as charged in the information.

Time is not usually an essential element of an offense. *State* v. *Ramos*, 176 Conn. 275, 276–77, 407 A.2d 952 (1978). The state is not required to narrow the dates in the information more than the evidence available warrants, even when the defendant wants to assert an

alibi defense. *State* v. *Morales*, 45 Conn. App. 116, 135, 694 A.2d 1356 (1997).

C

The defendant also asserts that the evidence was insufficient to sustain his conviction for criminal violation of a protective order because the only evidence that his vehicle was at the victim's house on the night of August 29, 1993, was that both his vehicle and the one the victim heard had "squeaky brakes." We do not agree.

In addition to what the victim heard, the state adduced evidence that she saw and identified the defendant's truck, which was well known to her, driving past her apartment. A jury is entitled to draw reasonable inferences from the evidence presented. See *State* v. *Adorno*, 45 Conn. App. 187, 194–95, 695 A.2d 6, cert. denied, 242 Conn. 904, 697 A.2d 688 (1997). The jury was free to find the victim's testimony more credible than the defendant's testimony in weighing the evidence presented.

VI

The defendant's last claim is that his due process rights under article first, § 8, of the Connecticut constitution[14] and the fourteenth amendment to the United States constitution were violated because he was sentenced without a court-ordered psychiatric report. The defendant's argument is that the trial court improperly imposed a sentence on him based on incomplete information, i.e., his psychiatric condition, thereby depriving him of his constitutional right to due process. We do not agree.

The facts relevant to this claim are as follows. After the jury verdict, the trial court ordered that the defendant be subjected to a psychiatric evaluation and that

[14] The defendant provides no separate analysis under the state constitution. See footnote 3.

the results be appended to the presentence investigation report in order to provide additional guidance to the court for the purposes of sentencing. The evaluation was never prepared because the various state agencies contacted for that purpose could not perform the evaluation either because of budgetary limitations or because of lack of statutory authority to examine the defendant. The trial court thereafter sentenced the defendant to a total effective sentence of seven years and three months imprisonment, execution suspended after four years, followed by five years probation. The trial court also imposed special conditions of probation, which included, inter alia, that the defendant undergo psychiatric treatment and counseling at the discretion of the office of adult probation, attend and complete a family violence education program, and attend an anger management program. The defendant did not object to the trial court's imposing the sentence in the absence of the psychiatric evaluation, did not seek a continuance so that the evaluation could be prepared, and did not take exception to the terms of the sentence imposed.

The defendant initiated no action seeking such an evaluation. He makes no claim that the sentence in any way exceeded the applicable statutory limitations, nor does he claim that there is a constitutional due process right to a presentence investigation report. While the defendant claims that that issue was properly preserved for appellate review, there is nothing in the record to support that position, other than that he did not agree to the sentence. The state argues that, because the defendant accepted the imposition of sentence without objection, he must be deemed to have waived any claim of improper sentencing.

We do not agree that the defendant waived any rights at sentencing. Moreover, the defendant does not claim

either *Golding* review or plain error review. See Practice Book § 4061. Because he invokes no principle of entitlement, we decline to review the defendant's claim.

The judgment is reversed only as to the conviction of disorderly conduct pursuant to § 53a-182 (a) (2) and the case is remanded with direction to render a judgment of not guilty on that charge;[15] the judgment is affirmed in all other respects.

In this opinion the other judges concurred.

---

[15] Unlike in *Indrisano*, the defendant herein was charged only with a violation of § 53a-182 (a) (2) and not with the additional violation of § 53a-182 (a) (1). In *State* v. *Indrisano*, supra, 228 Conn. 820, our Supreme Court remanded the case for a new trial under § 53a-182 (a) (1).