STATE OF CONNECTICUT *v.* VAN SNYDER
(AC 16898)

Lavery, Schaller and Spear, Js.

Argued May 5—officially released August 4, 1998

*John M. Gesmonde*, for the appellant (defendant).

*Rita M. Shair*, assistant state's attorney, with whom were *John A. Connelly*, state's attorney, and, on the brief, *Robin Lipsky*, assistant state's attorney, and *Holly Trexler*, legal intern, for the appellee (state).

### Opinion

LAVERY, J. The defendant, Van Snyder, appeals from the judgment of conviction, following the denial of his motion to dismiss and the entry of a nolo contendere plea,[1] of harassment in the second degree in violation

---

[1] The plea of nolo contendere was entered conditional on the right to appeal pursuant to General Statutes § 54-94a and Practice Book (1998 Rev.) § 61-6, formerly § 4003.

of General Statutes § 53a-183 (a) (2).[2] On appeal, the defendant claims that the trial court improperly denied his motion to dismiss because § 53a-183 (a) (2) is overbroad, unconstitutionally vague on its face and unconstitutionally vague as applied to the defendant.

In addition to harassment in the second degree, the defendant was charged with disorderly conduct in violation of General Statutes § 53a-182 (a) (2). The defendant filed a motion to dismiss all counts, arguing that the statutes defining the two offenses were facially vague and overbroad and, in the alternative, that the informations failed to charge an offense. The court granted the defendant's motion to dismiss the disorderly conduct counts on the basis of *State* v. *Indrisano*, 228 Conn. 795, 640 A.2d 986 (1994), and granted the defendant's motion to dismiss the harassment counts on the basis that the informations failed to charge an offense. The state was granted permission to appeal from the trial court's decision dismissing the harassment counts, pursuant to General Statutes § 54-96.

This court reversed the trial court's decision. *State* v. *Snyder*, 40 Conn. App. 544, 672 A.2d 535, cert. denied, 237 Conn. 921, 676 A.2d 1375 (1996). The issue on appeal was "whether § 53a-183 (a) (2) requires the state to prove that a defendant, with the intent to harass, annoy or alarm another person, directly communicated with that person, or whether the state may also prove a violation of that statute where it demonstrates that a defendant, with the intent to harass, annoy or alarm another person, communicated with a third party." Id.,

---

[2] General Statutes § 53a-183 (a) provides in relevant part: "A person is guilty of harassment in the second degree when . . . (2) with intent to harass, annoy or alarm another person, he communicates with a person by telegraph or mail, by electronically transmitting a facsimile through connection with a telephone network, by computer network, as defined in section 53a-250, or by any other form of written communication, in a manner likely to cause annoyance or alarm . . . ."

550–51. This court concluded that the statute "is not ambiguous and that it applies to a person who, with the intent to harass a victim, communicates with a third party by mail in an effort to cause such harassment"; id., 551; and that the trial court improperly interpreted the statute.[3]

On remand, the defendant reclaimed his motion to dismiss based on constitutional grounds. The trial court denied the motion. The defendant then entered a plea of nolo contendere conditioned on the right to appeal from the adverse determination on the motion to dismiss. This appeal followed.

This court in *State* v. *Snyder*, supra, 40 Conn. App. 544, relied on the following facts. "In April, 1993, Joseph Sullivan, the acting superintendent of public schools in Waterbury, and Charles Joy, the assistant superintendent for instruction, were jointly involved in the suspension of the defendant from duty for one week. The defendant was the principal of Crosby High School.

"Commencing in July, 1993, Sullivan, Joy, and Foster Crawford, the assistant superintendent for special education, began receiving by mail magazine subscriptions to which they had not subscribed and packages of merchandise and services that they had not ordered. For example, Joy received dozens of videocassettes, audio discs, music cassettes, and collector plates and cards. Joy estimated that as of October, 1993, he had received over 500 pieces of mail and merchandise valued at approximately $5620.

"All three of the victims had been billed for these unsolicited items and had received second and third notices from billing services. In these past due notices, the billing agencies threatened that they would take

---

[3] Because the trial court did not reach the constitutional issues raised by the defendant in his motion to dismiss, this court did not address them in the appeal. *State* v. *Snyder*, supra, 40 Conn. App. 550 n.8.

aggressive collection action if the outstanding bills were not paid. The notices caused the victims to believe that such action would have an adverse effect on their credit standings.

"Additionally, Sullivan, Joy and Crawford had spent a considerable amount of time making telephone calls and mailing numerous forms and letters in attempts to cancel unwanted magazine subscriptions, and to stem the tide of unordered and unwanted merchandise and services. Joy changed his telephone number in an effort to stop solicitors from calling at all hours of the day and night.

"On September 8, 1993, Joy attended a meeting in the defendant's office at Crosby High School. Joy wanted to take notes at the meeting and picked up a notepad from the defendant's desk. Joy noticed that the pad had an imprint of his name and home address. On September 15, 1993, Joy again attended a meeting at Crosby High School and, while he was using the telephone in the defendant's office, he saw ten or twelve subscription forms protruding from the defendant's desk drawer.

"On September 21, 1993, Joy received a telephone call from a person claiming that Joy was registered for a particular seminar. Joy asked the caller to send him the original registration card and the envelope in which it had been mailed, and the caller did so. When Joy received the registration materials, he compared the handwriting on the materials with the handwriting on certain documents that the defendant had prepared and signed. Joy concluded that the handwriting on the registration materials was very similar to that of the defendant. Joy also recognized that the postage on the registration envelope was from a postage meter at 236 Grand Street, the building where Joy's office was located.

"On October 8, 1993, Joy intercepted the mail from the Crosby High School mailbag and noticed a subscription card with his name and address listed as the subscriber. Joy asked a secretary to examine the contents of the mailbag, and the secretary found six pieces of mail similar to the one that Joy had discovered.

"The false subscription cards and known samples of the defendant's handwriting were submitted to the state forensic laboratory for handwriting comparison. The examiner concluded that the cards and the known samples were written by the defendant.

"On October 21, 1993, pursuant to a warrant, the police searched the defendant's office at Crosby High School. The items seized included thirty-one assorted mail orders and requests for magazine subscriptions and a box containing over 510 homemade address labels. Among the addresses printed on the labels were those of Joy's residence, Sullivan's residence and Crawford's residence and office. Over 300 of the labels contained the residential address of Guy DiBiasio, a former superintendent of public schools in Waterbury. The police also found three order forms containing the Waterbury address of Robert Rousseau, Karen Rousseau and James Wigglesworth.

"During the search, the defendant told the police that he had been subjected to harassment by the school officials who had suspended him, and, that for this reason, he was ordering subscriptions to be sent to the officials. The defendant also stated that he was having problems with a student, and that he had a confrontation with the student's father. Because the defendant was upset with this student and his father, he began ordering magazine subscriptions to be sent to the student's home.

"Approximately one month after the search of the defendant's office, Robert Rousseau and Karen Rousseau reported to the police that they had been involved

in a verbal confrontation with the defendant and that, thereafter, they had begun to receive numerous items of unsolicited mail. Karen Rousseau stated that the argument with the defendant pertained to Wigglesworth, her son. According to Karen Rousseau, one unwanted item sent to her home was a gift allegedly from Joy to Wigglesworth, an item that Joy claims he did not send.

"Also subsequent to the search of the defendant's office, DiBiasio filed a complaint with the police, claiming that he had been receiving hundreds of unsolicited mail subscriptions at his residence. DiBiasio reported that while he was superintendent, he had disciplined the defendant for a violation of school policies." Id., 546–49.

I

The defendant argues that § 53a-183 (a) (2) is unconstitutionally overbroad. We disagree.

"The essence of an overbreadth challenge is that a statute that proscribes certain conduct, even though it may have some permissible applications, sweeps within its proscription conduct protected by the first amendment. *Secretary of State* v. *J. H. Munson Co.*, 467 U.S. 947, 968, 104 S. Ct. 2839, 81 L. Ed. 2d 786 (1984); *Members of the City Council of Los Angeles* v. *Taxpayers for Vincent*, 466 U.S. 789, 798–801, 104 S. Ct. 2118, 80 L. Ed. 2d 772 (1984); *Husti* v. *Zuckerman Property Enterprises, Ltd.*, 199 Conn. 575, 587, 508 A.2d 735, appeal dismissed, 479 U.S. 802, 107 S. Ct. 43, 93 L. Ed. 2d 6 (1986). Overbroad statutes, like vague ones, inhibit the exercise of constitutionally protected conduct. . . . A party has standing to raise an overbreadth claim, however, only if there [is] a realistic danger that the statute will significantly compromise recognized First Amendment protections of parties not before the Court . . . ." (Citation omitted; internal quotation marks

omitted.) *State* v. *Rivera*, 30 Conn. App. 224, 229–30, 619 A.2d 1146, cert. denied, 225 Conn. 913, 623 A.2d 1024 (1993). In *Broadrick* v. *Oklahoma*, 413 U.S. 601, 615, 93 S. Ct. 2908, 37 L. Ed. 2d 830 (1973), the Supreme Court stated that "where conduct and not merely speech is involved, we believe that the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep."

In *State* v. *Anonymous (1978-4)*, 34 Conn. Sup. 689, 389 A.2d 1270 (1978), the Appellate Session of the Superior Court rejected a claim that General Statutes § 53a-183 (a) (3) was overbroad. "Where the means of communication involves an intrusion upon privacy, the right of free expression must be balanced against the right to be let alone. . . . A telephone is not a public forum where, in vindication of our liberties, unreceptive listeners need be exposed to the onslaught of repugnant ideas. . . . The overbreadth principle is not violated by the unrestricted scope of the messages which the statute may ban *because it is the manner and means employed to communicate them which is the subject of the prohibition rather than their content.* The statute is not flawed because a recital on the telephone of the most sublime prayer with the intention and effect of harassing the listener would fall within its ban as readily as the most scurrilous epithet. The prohibition is against purposeful harassment by means of a device readily susceptible to abuse as a constant trespasser upon our privacy." (Citations omitted; emphasis added.) Id., 696.

In *Gormley* v. *Director, Connecticut State Dept. of Probation*, 632 F.2d 938 (2d Cir.), cert. denied, 449 U.S. 1023, 101 S. Ct. 591, 66 L. Ed. 2d 485 (1985), the United States Court of Appeals for the Second Circuit upheld the decision in *State* v. *Anonymous (1978-4)*, supra, 34 Conn. Sup. 689. In a habeas corpus action, the defendant

repeated her claim that § 53a-183 (a) (3) was unconstitutionally overbroad. The Second Circuit concluded that "[c]learly the Connecticut statute regulates *conduct*, not mere speech. What is proscribed is the making of a telephone call, with the requisite intent and in the specified manner." (Emphasis in original.) *Gormley* v. *Director, Connecticut State Dept. of Probation*, supra, 941–42. The court further concluded that "[t]he asserted overbreadth of the Connecticut statute is circumscribed by the elements of the offense it proscribes. To run afoul of the statute, a telephone call must be made not merely to communicate, but 'with intent to harass, annoy or alarm' and 'in a manner likely to cause annoyance or alarm.' Whether speech actually occurs is irrelevant, since the statute proscribes conduct, whether or not a conversation actually ensues. *United States* v. *Lampley*, [573 F.2d 783, 787 (3d Cir. 1978)]." Id., 942.

We adopt the reasoning of the courts in *Gormley* and *Anonymous*, and conclude that § 53a-183 (a) (2) is not unconstitutionally overbroad. Section 53a-183 (a) (2) prohibits purposeful harassment by means of the mail, which is readily susceptible to abusive trespass on one's privacy. Since the statute proscribes conduct rather than the content of the mailings, the risk that the statute will chill the exercise of free speech is minor compared with the unfortunately prevalent misuse of the postal system to harass others and invade their privacy. Thus, because this statute prohibits intentional harassment by means of the mail and does not seek to regulate the content of such mailings, we hold that first amendment freedoms are not involved and the statute is not unconstitutionally overbroad.

II

"The purpose of the vagueness doctrine is twofold. The doctrine requires statutes to provide fair notice of the conduct to which they pertain and to establish

minimum guidelines to govern law enforcement. The United States Supreme Court has set forth standards for evaluating vagueness. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. . . . [A] law forbidding or requiring conduct in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates due process of law. . . .

"Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc basis and subjective basis, with the attendant dangers of arbitrary and discriminatory applications. . . . Therefore, a legislature [must] establish minimal guidelines to govern law enforcement. . . .

"Third, but related, where a vague statute abut[s] upon sensitive areas of basic First Amendment freedoms, it operates to inhibit the exercise of [those] freedoms. Uncertain meanings inevitably lead citizens to steer far wider of the unlawful . . . than if the boundaries of the forbidden areas were clearly marked." (Citations omitted; internal quotation marks omitted.) *State* v. *Indrisano*, supra, 228 Conn. 802–803.

"In a facial vagueness challenge, we also examine the challenged statute to see if it is impermissibly vague in all of its applications. A statute that is impermissibly vague in all its applications is vague, not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all. . . . Such a provision simply has *no* core.

. . . A statute may, however, have an unmistakable core meaning of prohibited conduct but, nonetheless, be vague in some of its applications. A defendant whose conduct clearly comes within a statute's unmistakable core of prohibited conduct may not raise a facial vagueness challenge to the statute." (Citations omitted; emphasis in original; internal quotation marks omitted.) Id., 804.

"Further, in evaluating the defendant's challenge to the constitutionality of the statute, we read the statute narrowly in order to save its constitutionality, rather than broadly in order to destroy it. We will indulge in every presumption in favor of the statute's constitutionality . . . . In so doing, we take into account any prior interpretations that this court, our Appellate Court and the Appellate Session of the Superior Court have placed on the statute." (Citations omitted; internal quotation marks omitted.) Id., 805. "The rule of federal vagueness jurisprudence is that prior judicial decisions interpreting a state statute are authoritative if they are decisions of a court of statewide jurisdiction, the decisions of which are binding upon all trial courts in the absence of a conflicting decision of the [state] Supreme Court . . . ." (Internal quotation marks omitted.) Id., 805 n.6.

"In our assessment of whether the statute passes constitutional muster, we proceed from the well recognized jurisprudential principle that '[t]he party attacking a validly enacted statute . . . bears the heavy burden of proving its unconstitutionality beyond a reasonable doubt and we indulge in every presumption in favor of the statute's constitutionality.' " *State* v. *Ross*, 230 Conn. 183, 236, 646 A.2d 1318 (1994), cert. denied, 513 U.S. 1165, 115 S. Ct. 1133, 130 L. Ed. 2d 1095 (1995).

In examining the facts and circumstances of the defendant's void for vagueness claim, "our fundamental inquiry is whether a person of ordinary intelligence

would comprehend that the defendant's acts were prohibited under [§ 53a-183 (a) (2)]." *State* v. *Payne*, 240 Conn. 766, 778, 695 A.2d 525 (1997).

Section 53a-183 (a) provides in relevant part: "A person is guilty of harassment in the second degree when . . . (2) with intent to harass, annoy or alarm another person, he communicates with a person by telegraph or mail, by electronically transmitting a facsimile through connection with a telephone network, by computer network, as defined in section 53a-250, or by any other form of written communication, in a manner likely to cause annoyance or alarm . . . ."

The defendant argues, citing *State* v. *Indrisano*, supra, 228 Conn. 795, that the statute is unconstitutionally vague because the terms "annoyance" and "alarm" are undefined. We do not agree.

The defendant has limited his argument solely to the conduct portion of § 53a-183 (a) (2) and relies on our Supreme Court's decision in *Indrisano*. In *Indrisano*, our Supreme Court held that the conduct portion of § 53a-182 (a) (2) was impermissibly vague on its face because the language of subdivision (2), "by offensive or disorderly conduct, annoys or interferes with another person," failed to specify a standard of conduct. The court concluded that "[b]ecause the Supreme Court of the United States has held that the term 'annoying,' when used to proscribe conduct, is unconstitutionally vague, we are bound as a matter of federal due process to conclude that the term 'annoy' as used in § 53a-182 (a) (2) is similarly vague." Id., 816.

The defendant argues that because the conduct portion of the harassment statute, § 53a-183 (a) (2), with which he was charged contains the term "annoyance," the statute is unconstitutionally vague in light of *Indrisano* and *Coates* v. *Cincinnati*, 402 U.S. 611, 91 S. Ct. 1686, 29 L. Ed. 2d 214 (1971).

"In light of our Supreme Court's decision in *Indrisano*, our analysis does not end here. Unlike the disorderly conduct statute in *Indrisano*, judicial gloss has been applied to the language of § 53a-183 (a) [(2)]. We have previously examined the statutory language of § 53a-183 (a) [(2)]. See *State* v. *Snyder*, [supra, 40 Conn. App. 544]; *State* v. *Lewtan*, 5 Conn. App. 79, 497 A.2d 60 (1985); *State* v. *Bellamy*, 4 Conn. App. 520, 495 A.2d 724 (1985). Although we did not address the issue of vagueness in those cases, we have determined that the language, '*in a manner likely to cause annoyance or alarm,*' is not ambiguous. See *State* v. *Snyder*, supra, 551. 'Our adoption of this interpretive gloss provides a sufficient core of meaning to remedy any facial vagueness that might otherwise exist.' *State* v. *Dyson*, 238 Conn. 784, 799, 680 A.2d 1306 (1996)." (Emphasis added.) *State* v. *Cummings*, 46 Conn. App. 661, 673–74, 701 A.2d 663, cert. denied, 243 Conn. 940, 702 A.2d 645 (1997).[4] We therefore conclude that § 53a-183 (a) (2) is not unconstitutionally vague on its face.

When applied to the defendant's conduct in this case, the statute is also not unconstitutionally vague. The defendant argues that his behavior and conduct in communicating with vendors for the purpose of having items sent to others does not fit within the criminal conduct proscribed by § 53a-183 (a) (2). The state argues that the defendant clearly intended to harass the victims by means of the mail to communicate some message or information to the victims. Further, the means by which the defendant executed his plan further indicates that his sole purpose was to harass by ordering multiple mailings to be sent to the victims. We agree with the state's arguments.

---

[4] The only difference between subdivisions (2) and (3) of § 53a-183 (a) is that subdivision (2) involves written communications and subdivision (3) involves communication by telephone.

We conclude that a person of ordinary intelligence would have fair warning that the outrageous conduct of sending unsolicited magazine subscriptions, video-cassettes, audio discs, music cassettes, collector plates and cards, and seminar enrollments to victims through the mail in retaliation for perceived harassment would constitute a violation of the statute. As this court has already determined, the fact that the defendant, with the intent to harass the victims, communicated with third parties initiating the sending of the aforementioned mail does not defeat the statutes' applicability. Furthermore, the defendant has failed to make a plausible argument, nor can we conceive of one, that he acted in reliance on the belief that his conduct was lawful or that a person of ordinary intelligence would have no reason to know that he was engaging in prohibited conduct. See *State* v. *Payne*, supra, 240 Conn. 779; *State* v. *Cummings*, supra, 46 Conn. App. 674.

We are unpersuaded that the defendant has met his heavy burden of proving that § 53a-183 (a) (2), as applied to the circumstances of this case, is unconstitutionally void for vagueness and conclude that the statute is not unconstitutionally void for vagueness.

The judgment is affirmed.

In this opinion the other judges concurred.