744 A.2d 1070

**George GALLOWAY, Jr.**

v.

**STATE of Maryland.**

**No. 1751, Sept. Term, 1998.**

Court of Special Appeals of Maryland.

Feb. 1, 2000.

Claudia A. Cortese, Asst. Public Defender (Stephen E. Harris, Public Defender, on the brief), Baltimore, for appellant.

Kathryn Grill Graeff, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and Frank Weathersbee, State's

Atty. for Anne Arundel County, Annapolis, on the brief), for appellee.

Submitted before MURPHY, C.J., and BYRNES and ADKINS, JJ.

ADKINS, Judge.

Appellant, George Galloway, Jr., while serving a previous sentence, was charged with stalking and harassment. On October 26, 1998, a hearing was held in the Circuit Court for Anne Arundel County on appellant's motion to dismiss, which was denied. On the same day, appellant waived his right to a jury trial and proceeded to trial upon an agreed statement of facts. In a written opinion, the trial court found appellant guilty of harassment and acquitted him of stalking. On November 4, 1998, appellant was sentenced to ninety days incarceration. This appeal followed.

Appellant asks us to decide whether the trial court erred in: 1) denying his motion to dismiss on the ground that the harassment statute is unconstitutional; and 2) convicting him of harassment without sufficient evidence.

## FACTS

In 1995, appellant was convicted of kidnapping and stalking Kimberly Jabin, and sentenced to twelve years in prison at the Maryland Correctional Training Center (MCTC). While serving his sentence, during the period April 11, 1997, to March 11, 1998, appellant sent Jabin 122 letters to her home address. In addition, he sent eleven letters in care of her parents at their home address.

According to the agreed statement of facts presented at appellant's trial, both before and after April 17, 1997, Jabin, her parents, appellant's former attorney, and both the assistant warden and a correctional psychologist at MCTC requested that appellant not send Jabin letters. By stipulation, the parties agreed that Jabin would testify that the letters "seriously alarmed her and caused her to fear [for her safety and]

for her life on or after [appellant's] release date" of April 1999. It was also stipulated that Jabin would testify that the letters' "continued reference to him being Moses and the enforcer of the law and God's and Jesus'[s] ambassador mean[t] that he will kill her so that they can be with God." She felt this way even though one of the letters began, "Nothing in this letter is meant to be a threat."

Additional facts will be included as they are necessary to our discussion.

## DISCUSSION

### I. CONSTITUTIONALITY OF STATUTE

Maryland Code (1957, 1992 Repl.Vol., 1995 Supp.), Art. 27, § 121A (the "harassment statute"),[1] provides:

(a) *Course of conduct.*—In this section "course of conduct" means a persistent pattern of conduct, composed of a series of acts over a period of time, that evidences a continuity of purpose.

(b) *Applicability.*—This section does not apply to any peaceable activity intended to express political views or provide information to others.

(c) *Prohibited conduct.*—A person may not follow another person in or about a public place or maliciously engage in a course of conduct that alarms or seriously annoys another person:

(1) With intent to harass, alarm, or annoy the other person;

(2) After reasonable warning or request to desist by or on behalf of the other person; and

(3) Without a legal purpose.

---

1. Maryland's current harassment statute is contained in Md.Code (1957, 1996 Repl.Vol., 1999 Supp.), Art. 27 § 123. (Effective October 1, 1998, Art. 27 § 121A became Art. 27 § 123). There have been minimal changes to this statute and the current version is currently substantially the same as its predecessor. We therefore refer to it in the present tense.

(d) *Penalty.*—A person who violates this section is guilty of a misdemeanor and, upon conviction, is subject to a fine not exceeding $500 or imprisonment for not more than 90 days or both.

Appellant contends that this statute is unconstitutional because: 1) it is overly vague, both on its face and as it applies to him; and 2) it is overbroad in that it intrudes into an area of constitutionally protected speech and prohibits what may not be punished under the First and Fourteenth Amendments to the United States Constitution.

## A. The Statute is not Void for Vagueness

Appellant first maintains that the statute is vague on its face in that it does not clearly inform the average citizen what actions are illegal and that people of reasonable intelligence could not know what it intends to prohibit and what it allows. He contends that it is impossible for a citizen to determine what communication will cause "alarm" or "serious annoyance," because these are measurements subject to change with the sensibilities of each individual.

Maryland appellate courts have addressed the constitutional standards requiring that criminal statutes not be impermissibly vague. A penal statute is impermissibly vague only when it fails to " 'explicit[ly] inform those who are subject to it what conduct on their part will render them liable to its penalties.' " *Williams v. State*, 329 Md. 1, 8, 616 A.2d 1275 (1992) (quoting *Connally v. General Const. Co.*, 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926)). This fair notice principle is grounded on the precept that one should be free to choose between lawful and unlawful conduct. *See Bowers v. State*, 283 Md. 115, 120–21, 389 A.2d 341 (1978). A statute may also "be void for vagueness if it lacks fixed enforcement standards or guidelines and thus 'impermissibly delegates basic policy matters to policemen, judges, and juries for resolution.' " *Eanes v. State*, 318 Md. 436, 459, 569 A.2d 604, *cert. denied*, 496 U.S. 938, 110 S.Ct. 3218, 110 L.Ed.2d 665

(1990) (quoting *Grayned v. Rockford,* 408 U.S. 104, 108–09, 92 S.Ct. 2294, 2299, 33 L.Ed.2d 222 (1972)).

In *Eanes,* the defendant challenged the constitutionality, on vagueness and other grounds, of a statute making it unlawful for anyone to "willfully disturb any neighborhood in [any Maryland] city, town or county by loud and unseemly noises...." *Id.* at 440, 569 A.2d 604. In upholding the statute against the challenge for vagueness, the Court of Appeals explained:

> A law is not vague simply because it requires conformity to an imprecise normative standard.
>
> 'The root of the vagueness doctrine is a rough idea of fairness. It is not a principle designed to convert into a constitutional dilemma the practical difficulties in drawing criminal statutes both general enough to take into account a variety of human conduct and sufficiently specific to provide fair warning that certain kinds of conduct are prohibited.'
>
> The touchstone is whether persons of ' "common intelligence" ' need reasonably ' "guess at its meaning." '

*Id.* at 459, 569 A.2d 604 (citations omitted).

The *Eanes* Court emphasized that "we here apply normal meanings to words of common understanding" and that "the objective 'reasonable' test is used in many areas of the law as an appropriate determinant of liability and thus a guide to conduct." *Id.* at 461–62, 569 A.2d 604.

We upheld the constitutionality of the "telephone harassment statute" against a challenge on vagueness grounds. Maryland Code (1957, 1996 Repl.Vol.), Art. 27 § 555A makes it illegal to "make use of telephone facilities or equipment ... if with intent to annoy, abuse, torment, harass, or embarrass one or more persons...." In *Caldwell v. State,* 26 Md.App. 94, 337 A.2d 476 (1975), we explained:

> The difficulty of determining whether certain marginal cases are within the meaning of a challenged penal statute's language ... does not automatically render that statute unconstitutional for vagueness....

'The Constitution has erected procedural safeguards to protect against conviction for crime except for violation of laws which have clearly defined conduct thereafter to be punished; *but the Constitution does not require impossible standards.'*

As a logical outgrowth of the above summarized 'vagueness doctrine', the Supreme Court has long recognized that a statute which might otherwise have been unconstitutionally vague can be saved constitutionally when it requires that the actor have a specific intent. . . .

'[W]here the punishment imposed is only for an act knowingly done with the purpose of doing that which the statute prohibits, the accused cannot be said to suffer from lack of warning or knowledge that the act which he does is a violation of law.'

*Id.* at 102–03, 337 A.2d 476. (emphasis in original) (citations omitted).

We further explained the rationale behind the specific intent "exception" to the vagueness doctrine as being that "a person already bent on serious wrongdoing has less need for notice and that a citizen who refrains from acting with morally bad intent is not endangered by the statutory sanction." *Id.* at 104, 337 A.2d 476 (quoting Note, *Unwanted Telephone Calls— A Legal Remedy,* 1967 Utah L.Rev. 379, 388–89 n. 52 (1967)). We concluded that the telephone harassment statute was not unconstitutionally vague because "[b]y requiring such specific intent the legislature has sufficiently delineated in a constitutional sense, what is criminal conduct under the statute so that the citizens of Maryland need not engage in a guessing game as to their criminal liability. . . ." *Id.* at 105, 337 A.2d 476.

 Appellant contends that section 121A is vague because the terms "alarm" and "seriously annoy" render the statute indefinite. These, however, are commonly understood words, and thus, persons of common intelligence need not guess at their meaning. Further, a citizen is protected from unanticipated criminal liability because one cannot be convicted for alarming or annoying another person unless he has

been requested to stop the annoying conduct. In this case, Jabin, her parents, the assistant warden of MCTC, and appellant's former counsel told appellant not to send letters to Jabin. Despite these warnings, appellant sent 122 letters to her within the period of eleven months. It strains credulity to suggest that appellant could not reasonably understand that these letters would alarm or seriously annoy a woman who is the victim of his prior crimes of kidnapping and stalking.

## B. The Statute is not Overly Broad

■ Appellant, relying on *Eanes,* also contends that the statute is unconstitutionally overbroad because it intrudes into an area of constitutionally protected speech. The Court of Appeals in *Eanes* discussed the issue of overbreadth:

'The crucial question ... is whether the [statute] sweeps within its prohibition what may not be punished under the First and Fourteenth Amendments.' The concern is that an overbroad statute may, by that very fact, have a chilling effect on free expression. That is, if a statute is to be struck down as overbroad, it must appear that the statute's very existence will inhibit free expression.

... Because the overbreadth doctrine involves a challenge to the facial validity of a statute, a court should not resort to it unless there is a realistic danger that the statute itself will significantly compromise recognized first amendment protection of parties not before the court.

*Eanes,* 318 Md. at 464–65, 569 A.2d 604 (citations omitted). The Supreme Court has explained:

[F]acial overbreadth adjudication is an exception to our traditional rules of practice and ... its function ... attenuates as the otherwise unprotected behavior that it forbids the State to sanction moves from 'pure speech' toward conduct and that conduct—even if expressive—falls within the scope of otherwise valid criminal laws that reflect legitimate state interests in maintaining comprehensive controls over harmful, constitutionally unprotected conduct. Although such laws, if too broadly worded, may deter protect-

ed speech to some unknown extent, there comes a point where that effect—at best a prediction—cannot, with confidence, justify invalidating a statute on its face and so prohibiting a State from enforcing a statute against conduct that is admittedly within its power to proscribe.

*Broadrick v. Oklahoma,* 413 U.S. 601, 615, 93 S.Ct. 2908, 2917–18, 37 L.Ed.2d 830 (1973).

Two out-of-state cases involving challenges to harassment statutes provide support for our decision. *See Connecticut v. Snyder,* 49 Conn.App. 617, 717 A.2d 240 (1998); *Michigan v. Taravella,* 133 Mich.App. 515, 350 N.W.2d 780 (1984). In *Snyder,* the state appealed from a dismissal prior to trial of charges that the defendant violated a statute that subjected one to criminal penalties when, "with intent to harass, annoy or alarm another person, he communicates with a person by telegraph or mail, by electronically transmitting a facsimile through connection with a telephone network, by computer network . . . or by any other form of written communication, in a manner likely to cause annoyance or alarm. . . ." *Snyder,* 717 A.2d at 245.

The *Snyder* court rejected the defendant's challenge that the statute was unconstitutionally overbroad, relying on principles similar to those set forth above in the Maryland decisions. *See id.* at 246. It also quoted with approval an earlier Connecticut case explicating First Amendment principles in the context of telephone harassment:

Where the means of communication involves an intrusion upon privacy, the right of free expression must be balanced against the right to be let alone. . . . A telephone is not a public forum where, in vindication of our liberties, unreceptive listeners need be exposed to the onslaught of repugnant ideas. . . . The overbreadth principle is not violated by the unrestricted scope of the messages which the statute may ban *because it is the manner and means employed to communicate them which is the subject of the prohibition rather than their content.* . . . The prohibition is against

purposeful harassment by means of a device readily susceptible to abuse as a constant trespasser upon our privacy.

*Id.* at 243–44 (quoting *Connecticut v. Anonymous,* 34 Conn. Supp. 689, 389 A.2d 1270, 1273 (1978) (citations omitted)). With respect to harassment by use of the postal service, the *Snyder* court said:

[The harassment statute] prohibits purposeful harassment by means of the mail, which is readily susceptible to abusive trespass on one's privacy. Since the statute proscribes conduct, rather than the content of the mailings, the risk that the statute will chill people from the exercise of free speech is minor compared with the unfortunately prevalent misuse of the postal system to harass others and invade their privacy.

*Id.* at 244.

In *Taravella,* the Court of Appeals of Michigan rejected a challenge, on vagueness grounds, to a statute proscribing the malicious use of telephone and telegraph services. In reaching its decision, the court discussed the privacy interests of persons in their homes to be protected against unwanted communications:

The extent to which a state may regulate such expression is 'dependent upon a showing that substantial privacy interests [of others] are being invaded in an essentially intolerable manner.' Thus, the privacy interest of a listener in the privacy of his home will be accorded greater protection, along with the commensurate restrictions on unwanted discourse, than would be permitted in a public forum.

*Taravella,* 350 N.W.2d at 783 (citation omitted). Responding to the defendant's offering of specific instances of conduct that he thought were impermissibly prohibited by the statute, the court said:

Do telephone calls by an angry parent to a student with failing grades, by a dissatisfied consumer or by a disgruntled constituent, if accompanied by language thought to be 'offensive' by the recipient of the call, subject the caller to criminal sanctions under the statute? In each case, defen-

dant claims, the caller's exercise of his constitutional right of free speech might 'annoy', 'frighten' or be considered 'obscene' or 'harassing' by the listener. Thus under defendant's interpretation of the statute, it is the listener's perception or characterization of the nature of the call which would control. We disagree. The statute clearly provides that the focus is on the caller; it is the malicious intent with which the transmission is made that establishes the criminality of the conduct.

*Id.* at 784. *See also Pennsylvania v. Hendrickson,* 555 Pa. 277, 724 A.2d 315 (1999) (upholding conviction of harassment for sending approximately four hundred faxes to forty people at their offices).

Appellee argues that section 121A

falls on the conduct end of the spectrum defined by *Broadrick.* The statute prohibits maliciously engaging in conduct with the intent to harass, alarm or annoy another person. Thus, it regulates conduct as opposed to speech, and therefore, it is not overbroad.

We agree. Based on the Maryland and other appellate decisions discussed above, we hold that section 121A withstands appellant's challenge that it is constitutionally overbroad.

## II. SUFFICIENCY OF THE EVIDENCE

Appellant also contends that the evidence was insufficient to support his conviction under section 121A. We disagree.

The test of appellate review of evidentiary sufficiency is "whether after viewing the evidence in the light most favorable to the prosecution *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Bloodsworth v. State,* 307 Md. 164, 167, 512 A.2d 1056 (1986) (citing *Jackson v. Virginia,* 443 U.S. 307, 313, 99 S.Ct. 2781, 2785, 61 L.Ed.2d 560 (1979)). Applying this standard, we find sufficient evidence to support appellant's conviction for harassment.

Appellant sent 122 letters to Jabin between April 11, 1997, and March 11, 1998, at her home. He also sent eleven letters to her at her parents' home. Jabin had specific reason to fear appellant because he had been convicted of kidnapping and stalking her two years earlier, and she feared that he would kill her after his release from prison in April 1999. Appellant had been requested by Jabin and her parents to stop writing to her. Additional requests for appellant to stop writing the letters were made by appellant's former attorney, the assistant warden at the prison, and the correctional psychologist at the jail. These requests were made both before and after April 17, 1997.

Appellant contends that the evidence did not establish beyond a reasonable doubt that the letters were intended to annoy or alarm Jabin. This argument has no merit. A person of common intelligence would have no trouble understanding that frequent written communications by a convicted felon to the home of a person whom he previously kidnapped and stalked, will seriously annoy or alarm the recipient. The trial court's finding that appellant had the requisite intent was well supported by the record.

Appellant further argues in defense that he merely intended to provide religious information to Jabin, and that the act of mailing letters was not malicious, and was only a minimal intrusion, which Jabin could have avoided by throwing away the letters. We agree with the reasoning of the Connecticut Court in *Snyder* that misuse of the postal system by repeated mailings to a private home can constitute an invasion of privacy and "where the means of communication involves an intrusion upon privacy, the right of free expression must be balanced against the right to be let alone." *Snyder*, 717 A.2d at 243. We can think of few, if any, circumstances when a person's right to be free from the intrusion of frequent personalized mail deserves more protection than when the mail recipient is the victim of a prior kidnapping and stalking by the sender of the letters.

JUDGMENT AFFIRMED. COSTS TO BE PAID BY APPELLANT.