

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-1069-09 & 1070-09

**SAMUEL SCOTT, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE FOURTH COURT OF APPEALS
### BEXAR COUNTY

**KELLER, P.J., filed a dissenting opinion.**

I believe that parts of the harassment statute implicate First Amendment freedoms and that those parts violate the Constitution. I therefore respectfully dissent.

### A. Prior Texas Cases

Our decisions in *Long v. State*[1] and *May v. State*,[2] and the Fifth Circuit's decision in *Kramer*

---

[1] 931 S.W.2d 285 (Tex. Crim. App. 1996).

[2] 765 S.W.2d 438 (Tex. Crim. App. 1989).

*v. Price*,[3] set the backdrop for the claim we now face.[4] These decisions invalidated statutes that contained the terms "annoy" and "alarm" as implicating First Amendment freedoms and being unduly vague.[5] In its opinion today, the Court's only attempt to distinguish these cases is to say that they involved different versions of the harassment statute than the one that is currently before us.[6]

But the harassment provision at issue in the present case is similar in pertinent ways to the stalking provision that we invalidated in *Long*. The part of the harassment statute at issue provides:

> A person commits an offense if, with intent to harass, annoy, alarm, abuse, torment, or embarrass another, he . . . makes repeated telephone communications . . . in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend another.[7]

The stalking provision in *Long* provided in relevant part:

> A person commits an offense if, with intent to harass, annoy, alarm, abuse, torment, or embarrass another, he . . . on more than one occasion engages in conduct . . . that is reasonably likely to harass, annoy, alarm, abuse, torment, or embarrass that

---

[3] 712 F.2d 174 (5th Cir. 1983), *rehearing en banc granted*, 716 F.2d 284 (5th Cir. 1983), *grant of relief affirmed*, 723 F.2d 1164 (5th Cir. 1984)).

[4] *Long* analyzed a similar issue as a vagueness claim with First Amendment implications. The Supreme Court's opinion in *Holder v. Humanitarian Law Project*, 130 S. Ct. 2705, 2718-19 (2010) (citing *United States v. Williams*, 553 U.S. 285, 304 (2008)), indicates that the proper analysis might be more appropriately characterized as a First Amendment overbreadth claim with a vagueness component. I analyze the issue in accord with *Humanitarian Law Project*, but the analysis is essentially the same.

[5] *See Long*, generally; *May*, 765 S.W.2d at 440 (following and quoting *Kramer*, 712 S.W.2d at 178: "By failing to provide reasonably clear guidelines, §42.07 gives officials unbounded discretion to apply the law selectively and subjects the exercise of the right of speech to an unascertainable standard.").

[6] Court's op. at 5 n.6.

[7] TEX. PENAL CODE § 42.07(a)(4).

person.[8]

A comparison of these passages reveals only three features in the current statute that were not in the former stalking provision: (1) the use of "repeated" instead of "on more than one occasion," (2) the additional emotional state of "offend" in the current statute, and (3) the limitation of the current statute to telephone communications.

### B. "Repeated"

The term "repeated" introduces an ambiguity not present with the "on more than one occasion" language in the former stalking statute. Is conduct "repeated" if it occurs twice? If the two occurrences are a year apart? Does it matter whether the circumstances show that the multiple instances of conduct are connected to the same scheme or course of conduct?[9] With respect to the facial constitutionality of a statute, this ambiguity may be acceptable if First Amendment considerations are absent. In many cases, it would be clear that a person's conduct was "repeated," so we could adjudicate on a case-by-case basis whether a particular person was afforded adequate notice under the statute.[10] But if First Amendment freedoms are at stake, we cannot allow the ambiguity in a statute to chill protected expression.[11]

The Court contends that we can read "repeated" to mean "more than one call in close enough

---

[8] *Long*, 931 S.W.2d at 288 (quoting the 1994 version of TEX. PENAL CODE §42.07(a)(7)).

[9] *See id.* at 291 (no nexus requirement in former stalking statute).

[10] *See Williams*, 553 U.S. at 304 (outside the First Amendment context, a person "who engages in conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others.").

[11] *Long*, 931 S.W.2d at 287; *Gooding v. Wilson*, 405 U.S. 518, 521 (1972) (referring to the need to protect persons "who may well refrain from exercising their rights for fear of criminal sanctions provided by a statute susceptible of application to protected expression").

proximity to properly be termed a single episode."[12] The Court fails to cite a single source, from a dictionary or otherwise, that limits "repeated" to actions in a single episode. Although a court has a general duty to employ "reasonable narrowing constructions" to avoid constitutional violations, it may not "assume the legislative prerogative and rewrite a statute" that is not "readily subject" to being narrowly construed.[13] Would once a day for a month constitute "a single episode?" Under any common understanding it would not, but it is hard to believe the Legislature did not intend to reach such conduct. As discussed below, the Legislature has a legitimate interest in proscribing conduct over the telephone that is intentionally harassing, abusing, and tormenting. In my opinion, that interest would legitimately extend to multiple instances of conduct that could not reasonably be considered part of a single episode.

### C. Offend

The term "offend" does nothing to obviate the concerns expressed in *Long*. We explained there that a person's intent to inflict a more intense emotional state than "annoy" might serve to take the First Amendment out of the picture.[14] But "offend" is no more intense an emotional state than "annoy" and "embarrass," which we concluded "probably describe the least intense emotional states available under the [stalking] statute."[15]

---

[12] Court's op. at 9 n.12.

[13] *Long*, 931 S.W.2d at 295.

[14] *Id.* at 293.

[15] *See id.* at 296. In addition, "offend" appears only in the second of the two lists of emotional terms—relating to what emotional state the victim was "reasonably likely" to suffer. *See* TEX. PENAL CODE § 42.07(a)(4). The statute does not have a corresponding requirement of intent to offend. *Id.*, §42.07(a).

### D. Telephone Communications

That leaves the remaining distinctive feature of the current harassment provision: the fact that it is limited to telephone communications. I agree with the Court that the First Amendment is not implicated when the "intent"and the "reasonably likely" effect of a person's conduct is to "harass," "abuse," or "torment." But I would hold that the First Amendment is implicated when the "intent" or "reasonably likely" effect of a person's conduct is to "annoy," "alarm," "embarrass," or "offend."

### 1. *Binding Precedent*

In *Long*, we said that the terms "harass," "abuse," and "torment" carried a greater emotional intensity than "annoy" or "embarrass," though they still implicated First Amendment freedoms under the stalking statute.[16] The former stalking statute expansively covered "*any* conduct in which a person could possibly engage."[17] But the context in which the harassing conduct occurs can be important. Government can act, consistent with the First Amendment, to prevent "substantial privacy interests" from "being invaded in an essentially intolerable manner."[18] The State has the greatest leeway in regulating expression in favor of privacy interests when it seeks to "prohibit intrusion into the privacy of the home."[19] At the same time, the Supreme Court has stressed that "we are often 'captives' outside the sanctuary of the home and subject to objectionable speech."[20] Telephone harassment under the current statute can sometimes occur in the home, but the statute

---

[16] *Long*, 931 S.W.2d at 296.

[17] *Id.* at 289 (emphasis in original).

[18] *Cohen v. California*, 403 U.S. 15, 21 (1971).

[19] *Id.*

[20] *Id.* (some internal quotation marks omitted).

does not limit it in that manner.

## 2. *Other Jurisdictions*

In *United States v. Bowker*, the Sixth Circuit addressed the constitutionality of the federal telephone harassment statute, which proscribed phone calls made by a person "without disclosing his identity and with intent to annoy, abuse, threaten, or harass."[21] The court identified two factors in upholding the constitutionality of the federal statute against a First Amendment overbreadth challenge.[22] First, the court explained that the federal statute focuses "not simply [on] annoying telephonic communications" but also prohibits "abusive, threatening or harassing communications."[23] Second, the court said, the statute operates in a more private realm in which the listener has to "deal with much more inconvenience to avoid" the unwanted speech, and the unidentified nature of the caller was more likely to instill fear in the listener and make it more difficult for the listener to confront the caller.[24]

The New Hampshire Supreme Court distinguished its state's telephone harassment statute from that in *Bowker* on two grounds: the state statute prohibited "all telephone calls placed with the intent to annoy or alarm" and it did not require anonymity.[25] The court found that the New Hampshire statute was not directed toward only those communications intended to instill fear in the

---

[21] *See United States v. Bowker*, 372 F.3d 365, 377 n.3 (6th Cir. 2004), *vacated on other grounds*, 543 U.S. 1182 (2005).

[22] *Id.* at 379; *see also United States v. Eckhardt*, 466 F.3d 938, 943-44 (11th Cir. 2006) (following *Bowker*).

[23] *Bowker*, 372 F.3d at 379.

[24] *Id.*

[25] *State v. Brobst*, 151 N.H. 420, 422 (2004).

victim, but instead swept far more broadly.[26]  "Simply put," the court explained, "the First Amendment is made of sterner stuff."[27]  The court concluded that the New Hampshire statute was overbroad because it covered a substantial amount of protected First Amendment speech, and there was a real likelihood that it might discourage citizens from exercising that speech.[28]

In *Galloway v. State*,[29] Maryland's court of last resort addressed the constitutionality of its harassment statute, which provided as follows:

> a) Course of conduct defined. - In this section "course of conduct" means a persistent pattern of conduct, composed of a series of acts over a period of time, that evidences a continuity of purpose.
>
> (b) Applicability. - This section does not apply to any peaceable activity intended to express political views or provide information to others.
>
> (c) Prohibited Conduct. - A person may not follow another person in or about a public place or maliciously engage in a course of conduct that alarms or *seriously* annoys another person:
>
> (1) With intent to harass, alarm, or annoy the other person;
>
> (2) After reasonable warning or request to desist by or on behalf of the other person; and
>
> (3) Without a legal purpose.[30]

The *Galloway* court initially stressed the significance of the adverb "seriously" that preceded

---

[26] *Id.*

[27] *Id.* at 423.

[28] *Id.*

[29] 365 Md. 599, 781 A.2d 851 (2001).

[30] *Id.*, 365 Md. at 608-09, 781 A.2d at 856 (quoting Maryland Code, (1957, 1996 Repl. Vol., 2000 Cum. Supp.), Article 27, § 123) (emphasis in *Galloway*).

"annoy,"[31] but the court also noted a number of other restrictions that made the statute acceptable: the statute required "a reasonable warning to desist," it did not apply to "any peaceable activity intended to express political views or provide information to others," and it mandated that there be no "legal purpose" for the activity.[32] Additionally, the court employed a narrowing construction by reading a "reasonable person" standard into the statute.[33] Further, the court found that the presence of a specific intent requirement, though it might not be able by itself to save a statute from constitutional infirmity, helped to ensure that an accused had fair notice that he was violating a criminal statute.[34] The court also quoted from a Connecticut case for the proposition that its harassment statute did not implicate overbreadth concerns under the First Amendment because the "prohibition is against purposeful harassment by means of a device readily susceptible to abuse as a constant trespasser upon our privacy."[35]

### 3. *Comparison with Other Statutes*

The harassment provision before us lacks most of the restrictions found in the statutes that were analyzed in *Bowker* and *Galloway*. The portion of the statute at issue does not require that the

---

[31] *Id.*, 365 Md. at 608 n.4, 781 A.2d at 856 n.4.

[32] *Id.*, 365 Md. at 619, 781 A.2d at 862.

[33] *Id.*, 365 Md. at 620, 781 A.2d at 863.

[34] *Id.*, 365 Md. at 632-33, 781 A.2d at 870-71.

[35] *Id.*, 365 Md. at 641-42, 781 A.2d at 876 (quoting *Connecticut v. Snyder*, 49 Conn. App. 617, 624, 717 A.2d 240, 243-44 (Conn. App. Ct. 1998) (in turn quoting *Connecticut v. Anonymous*, 34 Conn. Supp. 689, 696, 389 A.2d 1270, 1273-74 (Conn. Super. Ct. 1978))).

calls be anonymous.[36] Although the Texas statute proscribes "repeated" communications, it does not require a showing that these communications were pursuant to a course of conduct. No exception is made for the expression of political views or the dissemination of information, and no reasonable warning to desist is required before further conduct triggers prosecution. Furthermore, the Texas statute does not contain a "reasonable person" standard.[37] And though specific intent is required by the Texas provision, that specific intent can attach to low intensity emotional states (annoy, alarm, embarrass).

#### 4. *Low Intensity versus High Intensity Emotional States*

As we said in *Long*, "The First Amendment does not permit the outlawing of conduct merely because the speaker intends to annoy the listener and a reasonable person would in fact be annoyed."[38] The same could be said of the intent to alarm or embarrass. An intent to inflict one of these low intensity emotional states on the listener, even in the context of a telephone conversation, could easily be part of a legitimate communication protected by the First Amendment. A constituent might call his congressman to express a grievance, and annoying that congressman may be part of a legitimate attempt to spur him to act on that grievance. Political phone calls could be made to the

---

[36] A portion of the statute does proscribe anonymous calls, *see* TEX. PENAL CODE §42.07(a)(4), but that part of the statute was not relied upon in this prosecution, and I express no opinion about it.

[37] *Long*, 931 S.W.2d at 289-90 ("reasonably likely" language in the former stalking provision did not codify a reasonable person standard).

[38] *Id.* at 290 n.4. The Supreme Court has recently suggested that whether an actor has a particular intent is a "true-or-false determination," not a "subjective judgment" that would render a statute vague. *See Ex parte Ellis*, 309 S.W.3d 71, 89-90 (Tex. Crim. App. 2010) (quoting *Williams*, 553 U.S. at 306). In *Long*, we recognized that even if "intent to annoy, alarm, etc." was clear, a statute could still "run into a serious overbreadth problem." *Long*, 931 S.W.2d at 290 n.4.

homes of prospective voters with the intent to alarm those voters about a candidate's opponent[39] or about a particular government policy. A concerned neighbor or jilted lover might hope to embarrass a husband engaged in an extramarital affair by leaving a message on his answering machine for the wife to hear. Any of these behaviors might be criminal if the caller calls twice.

On the other hand, no one has the right to intentionally harass, abuse, or torment other people over a telephone. Specific intent is a limited mental state that is distinctly narrower than the mental states of knowledge and recklessness.[40] The statute requires that the caller intend to harass, abuse, or torment the recipient of the call, not merely that the caller know or suspect that his call may have that effect. Moreover, the telephone is a comparatively personal and private method of communication in which messages can be difficult to screen. As the *Galloway* court explained, it is "a device readily susceptible to abuse" by a person who intends to be "a constant trespasser upon our privacy." When the intent of the actor is to inflict one of the higher-intensity emotional states of harass, abuse, and torment in the relatively private, "captive-audience" telephone context, and the actor's conduct is reasonably likely to achieve that end, the First Amendment provides no protection.

### E. "Sole" Intent

Consequently, I would hold that the harassment provision at issue implicates the First Amendment with respect to the terms "annoy," "alarm," "embarrass," and "offend," but does not implicate the First Amendment with respect to the terms "harass," "abuse," and "torment." The

---

[39] This observation was made by the court of appeals below. *See Scott*, 298 S.W.3d at 270.

[40] *See Stewart v. State*, 240 S.W.3d 872, 873-74 (Tex. Crim. App. 2007) (overturning tampering with evidence prosecution because, even if the defendant *knew* that his action would impair the availability of marijuana as evidence, the prosecution had not shown that he *intended* to impair its availability).

Court contends that the entire statute is outside the purview of the First Amendment because "in the usual case, people whose conduct violates §42.07(a)(4) will not have an intent to engage in legitimate communications of ideas, opinion, or information; they will have only the intent to inflict emotional distress for its own sake."[41] But nothing in the statute limits its application to those occasions when the actor's sole intent is to inflict emotional distress, and if the court is implying that situations are rare in which a person has more than one intent, I disagree. The mischief this statute can create is enormous, as some of the hypotheticals given above illustrate.

And it is not feasible to graft "sole intent" onto the harassment statute as a narrowing construction. As I have explained, a court has a general duty to employ reasonable narrowing constructions to avoid constitutional violations, but it may not assume the legislative prerogative and rewrite a statute that is not readily subject to being narrowly construed.[42] The Legislature can legitimately punish a person who intentionally harasses, abuses, or torments someone over the telephone even if that is not the person's sole intent. One can easily imagine an ex-boyfriend hounding someone over the telephone with the intent to harass, abuse, or torment, but also having a particular grievance, real or imagined, to communicate. Such actors still deserve to be punished and are legitimately covered by the statute. When intentionally harassing, abusing, and tormenting conduct is occurring over the telephone, the authorities should not have to refrain from acting because the caller has or might have another reason for the call. Moreover, at trial the State would be saddled with proving "sole intent." A "sole intent" narrowing construction would do more to undermine the statute than simply severing (with respect to the part of the statute at issue) the

---

[41] Court's op. at 10.

[42] *Long*, 931 S.W.2d at 295.

problematic terms "annoy," "alarm," "embarrass," and "offend."[43]  And finally, there is no basis in the statute for applying a "sole intent" construction only to the emotional states of "annoy," "alarm," and "embarrass."  The Supreme Court has explained that a party "give[s] the game away" when he argues that an intent requirement applies in some circumstances but not others if there is no basis whatever in the text for doing so.[44]  The Supreme Court stated that, though it "will often strain to construe legislation so as to save it against constitutional attack, it must not and will not carry this to the point of perverting the purpose of a statute."[45]

### F. Spoken Words

The Court also says that the text of harassment statute "does not require that the actor use spoken words."[46]  The portion of the statute at issue here proscribes "telephone communications."[47]  Although someone may use a "telephone communication" for something other than words (e.g. silence or heavy breathing), the portion of the statute at issue here overwhelmingly implicates the spoken word.  For example, ringing the phone repeatedly is proscribed by a part of the statute not

---

[43]  Indeed, one can wonder whether a "sole intent" narrowing construction would destroy the statute in an attempt to save it because virtually every defendant would claim to have some other intent in addition to an intent to inflict emotional distress.

[44]  *Holder v. Humanitarian Law Project*, 130 S. Ct. at 2718. ("Finally, plaintiffs give the game away when they argue that a specific intent requirement should apply only when the material-support statute applies to speech.  There is no basis whatever in the text of § 2339B to read the same provisions in that statute as requiring intent in some circumstances but not others.").

[45]  *Id.*

[46]  Court's op. at 9.

[47]  *See*  Tex. Penal Code §42.07(a)(4), quoted in this opinion, *ante.*

at issue here.[48]  Moreover, although words are not required, that fact would not distinguish this case

from *Long*, in which First Amendment freedoms were found to be implicated by the stalking

statute.[49]

      For the above reasons, I respectfully dissent.

Filed: October 6, 2010
Publish

---

[48]S  *ee* TEX. PENAL CODE §42.07(a)(4).

[49]  *See* this opinion, *ante*.